**SOUTHERN LIFE AND HEALTH INSURANCE COMPANY, Appellant,**

v.

**Merla Mae Chevis SIMON et al., Appellees.**

No. 6846.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 2, 1967.

Rehearing Denied March 1, 1967.

Barnes & Barnes, Beaumont, for appellant.

George W. Brown, Jr., Beaumont, for appellees.

PARKER, Justice.

Southern Life and Health Insurance Company issued a "Limited Accident Industrial Policy" to Austin Chevis (with his wife Merla Mae Chevis named as beneficiary). Chevis was accidentally killed. Merla Mae Chevis Simon (widow of the insured) and her husband, Joseph Simon, Jr., sued the insurance company to recover for the accidental death of the insured under the policy. The trial was before the court without a jury. Judgment was rendered for the full death indemnity provided by the policy, together with statutory penalty, interest and attorney's fees. The insurance company in its appeal does not contest the award of interest, damages, statutory penalty and attorney's fees if its primary liability under the policy is affirmed.

The policy itself provides:

"2. Or if the Insured shall by collision of or any accident to any railroad passenger car, passenger steamship, public omnibus, street railway car, public taxicab, public automobile, public stage or public bus which is being driven or operated at the time by one regularly employed for that purpose, and inside of which the Insured is legally traveling; any private horse drawn vehicle or private motor driven automobile, inside of which the Insured is riding or driving, or any motor driven truck, inside of which the Insured is riding or driving, or if a street car motorman or street car conductor in addition to being covered as an individual by all the above provisions of the Policy he shall also be covered, while actually operating a street car in the line of his employment when injured by collision of or accident to the street car which he is operating; or by any accident to any passenger-elevator, inside of which the Insured is riding as a passenger; provided, that in all cases referred to in this paragraph there shall be some external or visible injury on the said vehicle or elevator of the collision, or accident, provided that an injury to the tire on such vehicle shall not be considered an injury to the vehicle, and provided that this Policy does not cover Insured while riding in or on a motorcycle or in or on any side car or other attachment to a motorcycle—and provided that except as to railroad passenger cars, passenger steamships, street cars and elevators the collision or accident must occur on a public highway as heretofore defined.

"3. Should the Insured suffer any of the specific losses set forth below, the Company will pay the sum opposite such loss, and such payment shall be a full settlement under this Policy, which shall be delivered up for cancellation.

"FOR LOSS OF
LIFE ................TWO THOUSAND DOLLARS ($2,000.00)"

In the early morning of February 27, 1962, the longshoreman Austin Chevis was fatally injured on the "SS Lena Luckenbach". According to the Coast Guard Inspection Certificate the "Luckenbach" is certified to carry 12 passengers. Her passenger accommodations consist of 6 cabins, each equipped with private bathroom facilities with 2 pull-down bunks that serve as seats in the daytime and make into beds at night. The ship has a passenger lounge. The passengers eat their meals with the officers in the saloon messroom. Some recreational facilities are provided for the passengers. When she was in the inter-coastal run and up until May of 1961 she always carried from 4 to 12 passengers. When the accident occurred there were no passengers aboard but all of the ship's facilities for carrying passengers were intact and ready to receive passengers at that time. The charter party under which the vessel was then being operated had the right to carry passengers. The insurance company does not controvert that the "Luckenbach" "was equipped to be a passenger steamship" or that "she had been a passenger steamship" but does assign as error the court's finding that she "was a passenger steamship". This contention of the insurance company is based upon the fact that at the time of this accident the steamship was operating only as a freighter. No Texas authorities are cited by the insurance company in support of its contention. In Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953), a policy was construed which provided indemnity against loss resulting from injury sustained in consequence of riding as a passenger in an airplane. The question before the court was whether the death of an airplane pilot in an accidental crash of the plane under his control was a passenger and covered by the policy. The court concluded that the word "passenger" as used in the policy covered an occupant of the plane. The court said at p. 763:

"But for the fact that insurance policies are governed by the special rule of con-struction, which is a familiar part of our jurisprudence, we might, indeed, hold either that the interpretation against liability of the insurer should prevail or that, the policy being ambiguous, there is a fact issue as to what was intended. Yet the rule, of course, applies, and under it the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable. Lloyds Casualty Insurer v. McCrary, 149 Tex. 172, 179, 229 S.W.2d 605, 609. A related or subsidiary rule is 'that exceptions and words of limitation will be strictly construed against the insurer.' Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, 381. For all the particular considerations reasonably indicating that the pilot is not covered, there are yet others making it not unreasonable to say that he is, and that the insurer is therefore liable."

and at p. 767:

"Since, therefore, the intent of the policy to exclude the pilot is not so certain as to make it wholly unreasonable to say that he was included, the judgment of the Court of Civil Appeals so holding should be affirmed and it is so ordered."

The policy states that it will provide benefits only for injuries sustained "strictly in the manner hereinafter stated", that the liability assumed is fixed by "various conditions, exceptions and limitations" to be "literally construed", with none to be stricken out or ignored or disregarded in its interpretation, either on the ground that they are ambiguous or wholly or partially repugnant or for any other reason, but each is to be given its full and literal meaning.

The full and literal meaning of "passenger steamship" is finding out its true sense, employing the natural or usual construction and implication of the words. The "SS Lena Luckenbach", when carry-

ing freight only, is not just a freighter. It is also a passenger steamship. Under the policy and the decisions of the Supreme Court of Texas, in construing "passenger steamship" the fact the "Lena Luckenbach" was equipped to carry and had carried passengers cannot be disregarded. The trial court correctly found it was a passenger steamship, although designed and equipped for the dual purpose of carrying freight and passengers.

Paraphrasing Warren and Mutual Benefit Health and Accident Association v. Hudman, 385 S.W.2d 509 (Tex.Civ.App. 1964) at page 514:

> If the insurance company had intended to limit its coverage to ships designed exclusively for the transportation of passengers it was incumbent upon it to so write in its policy. Not having done so, we hold this steamship is a passenger steamship within the meaning of the policy in the suit.

This interpretation is one which in itself is not unreasonable. The test in Continental Cas. Co. v. Warren, supra, is analyzed in United Services Life Ins. Co. v. Delaney, 308 F.2d 484 (5th Cir.) on page 487:

> "The majority acknowledged that each of the arguments advanced by the dissenters had the appearance of validity, taking up each facet of the dissenting opinion and disposing of its arguments one by one. It emphasized repeatedly the[v] firmly established Texas rule that those who sell insurance policies and have the privilege of writing them had better use the clearest of language if they would escape liability to claimants who, under the common parlance of the layman, are able to bring themselves within the ambit of the risks insured against by any argument approaching reasonableness."

■ The trial court correctly found as a fact that Austin Chevis was legally traveling aboard the "SS· Lena Luckenbach". The evidence is undisputed that Austin Chevis was killed by collision of or accident to the motor driven truck inside of which he was· riding or driving which was inside the ship when he was killed and that he was legally aboard the vessel. Driving this truck he was moving from point to point inside the ship. The policy does not state that the ship itself must have been traveling or ·that the insured had to be a passenger on the ship if he was inside a motor driven truck, inside of which the insured is riding or driving.

■ The trial court correctly found as a fact that at the time Austin Chevis was killed the "SS Lena Luckenbach" was being operated by persons regularly employed for that purpose. Chevis was legally employed to drive the truck. The ship was in commission, her officers were aboard and in charge of and actually operating her. The ship's officers and crew on board were regularly employed for that purpose, the number of crewmen being 45 including the officers. The deck crew had been called to secure the ship for sea. The ship had steam up. Electric power generated by an engine was being kept on the winches. The main engine was in the process of being readied for sailing time. At the time of the accident Chevis was driving a fork lift truck used in loading the ship on what is called the shelter deck, sometimes designated as the upper tween deck. A fork lift truck has four wheels. This device fell 14 feet through the hold and came to rest between the queen beam and the coaming. It was in that accident Chevis was killed. There was visible damage to the ship. The first queen beam was severely sprung with a resulting bow in the end of the ship. The hatch boards in the upper tween deck were broken. After the accident the lift truck was upside down, evidencing "some external or visible injury" to it. Chevis was visibly dead, the body resting upon some cargo. The body was ¨placed in a basket and brought out of the hold. The trial court correctly found that: "at the time of the injuries which resulted in the death of the

insured," he was riding and driving a motor driven truck and was killed as a result of bodily injuries received by collision of and accident to a motor driven truck inside of which he was riding or driving.

 The insurance company did not plead as a defense, which it now urges, an exclusion in the policy as to "injuries, either fatal or nonfatal, of which there is no visible contusion or wound on the exterior of the body of the insured causing death." Such exclusion is a risk or cause coming within a particular exception to the general liability. Under Rule 94, Texas Rules of Civil Procedure, this defense was waived. No fraud is involved in this case. There is no question as to what caused the death of Chevis. There could be no simulated injuries with a person instantaneously killed under these circumstances. American Jurisprudence, Vol. 29A, p. 318, § 1172, and pp. 316, 317, § 1170. Visible is used in the broad sense of perceptible or evident. A contusion of the body is a disorganization of a part of it without breaking of the skin. It was evident and discernible Chevis was dead with his body disorganized. This provision in the policy in any event is inapplicable in a case involving instant death. Hawkinson v. Order of United Commercial Travelers, 20 S.W.2d 101, 103 and cited authorities (Tex.Civ.App. 1929, n. w. h.); Royal Casualty Co. v. Nelson, 153 S.W. 674, 676 (Tex.Civ.App. 1913, n. w. h.).

Chevis was killed "by collision of or any accident to" the motor driven fork lift truck, inside of which he was riding or driving. There was some external or visible injury to the ship and to the truck, as a result of the accident. Both vehicles were being operated at the time of the accident by persons, respectively, regularly employed for that purpose. Chevis was legally traveling in the truck while legally aboard the ship. Since the collision or accident involved a passenger steamship, the policy did not require that it occur on a public highway for liability under the policy to be established. It would be most unreason-able to deny liability under the policy and the entire record.

Each and all of the points of error of Southern Life and Health Insurance Company are overruled.

Judgment of the trial court affirmed.