NEW YORK UNDERWRITERS INSURANCE COMPANY, Appellant,

v.

Harold W. COFFMAN et ux., Appellee.

No. 17718.

Court of Civil Appeals of Texas, Fort Worth.

July 16, 1976.

Rehearing Denied Sept. 10, 1976.

Thompson, Coe, Cousins & Irons, and Larry L. Gollaher, Dallas, for appellant.

C. Coit Mock, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Harold W. Coffman and wife, Ollie Coffman, appellees, initiated this action by suing New York Underwriters Insurance Company, appellant, on a policy of insurance which included what is generally known as "Boiler and Machinery" coverage.

This policy insured an apartment complex owned and operated by the plaintiffs. The policy in general insured plaintiffs from losses occasioned by accidental damage to the air conditioning system, loss because of interruption of business caused thereby, the cost of temporary repair and expediting expenses of the air conditioning machinery, and the cost of repair or replacement of the damaged machinery. The insurance company contends that it is not liable because the plaintiffs did not give it notice of the accident in the time and manner required by the policy; plaintiffs violated a policy provision which required them to give the insurance company an opportunity to examine the damaged parts before their removal from the premises; plaintiffs did not properly prove the amount of damage to the machinery and loss of rental because of the breakdown; the verdict was too large; and interest was improperly computed. The Coffmans assigned a cross-point of error claiming that the trial court awarded them less damages than required by the findings of the jury.

Judgment modified and, as modified, affirmed.

Plaintiffs are the owners of Randol Mill Terrace Apartments consisting of 80 units of 1 to 3 bedrooms each. These apartments were generally rented by written leases for periods of time ranging from 6 months to a year. No apartment was ever rented on a daily basis.

On June 24, 1972, the air conditioning system in the entire apartment complex failed due to a breakdown of a seventy-five (75) ton Bell & Gossett compressor. The air conditioning system was serviced regularly by Air Service Company. Immediately after the accidental breakdown plaintiff and this company tried to locate parts in this and other states in order to get the compressor operating again. Air Service Company, after much difficulty, obtained a seal and bearing which was put on the compressor; however, the compressor ran for only about five hours before breaking down again. The compressor failed and an in-

spection revealed that the new seal was damaged.

The company that had manufactured the compressor was no longer in business. Frantic attempts to obtain parts to make the compressor operable were unsuccessful. The temperature was unseasonably hot at the time of the breakdown, and for a week or more thereafter, reaching temperatures of 106, 110, and 112 degrees.

After the second breakdown plaintiffs employed another company, Texas Distributors, Inc., to install replacement machinery since repair parts were not available and many of the tenants were vacating their apartments. The new installation took place during the weekend of the fourth of July holiday. Immediately after the June 24 breakdown Mr. Coffman caused a telephone call to be made to the residence of the local agent who had issued this policy and gave notice of the accident to a member of his family and requested the agent to call the plaintiffs. The Coffmans also gave additional notice on July 10, 1972, which insurer stipulated complied with the written notice provisions of the policy.

The jury found: (1) the compressor failed due to accidental damage; (2) the insureds gave notice to the insurer as soon as practicable; (3) it was impractical to repair the damaged compressor; (4) the reasonable cost of repairs necessitated by the accident was $6,500; (5) the reasonable replacement cost of the damaged equipment was $8,500; (6) the insureds incurred additional costs for temporary repair in expediting the repair of the damaged property in the amount of $777.80; (7) the insured average daily rental income before the accident was $700.00 and the daily loss after the accident was $233.33; and (8) the insurance company did not waive the notice requirements of the policy.

This cause of action instituted by the Coffmans against the insurance company was consolidated and tried with the cause of action brought by Texas Distributors, Inc., against the Coffmans. This latter suit was brought for the purpose of collecting the balance due it by the Coffmans as a result of having replaced the air conditioning equipment, the breakdown of which gave rise to both lawsuits. Texas Distributors, Inc., recovered judgment against the Coffmans but no appeal was perfected concerning that portion of the controversy. Therefore, we will consider the issues between Texas Distributors, Inc., and the plaintiffs only to the extent it may affect the claims against the insurance company.

This policy consists of 21 pages. It contains two insuring sections, a declaration page, a coded schedule of insured property, four endorsements, including a "Use and Occupancy (Valued)" endorsement, endorsement B(1) "Coded Blanket Group Descriptions", endorsement B(2), Boiler and Machinery Endorsement A(1), Boiler and Machinery Endorsement A(2), Boiler and Machinery Endorsement A(3).

▇ The insurance company, by its first point, asserts the trial court erred in failing to render judgment that plaintiffs take nothing because they failed, as a matter of law, to comply with a notice condition of the "Boiler and Machinery" policy.

The policy contains several references to matters of notice. The first reference requires the insureds to send notice of accident by telegram or letter to the home office of the company or its Houston office and stipulates that recoverable damages for loss of income will not commence until 24 hours before the required notice is received at one of these two places. The second reference to notice provides that written notice shall be given to the company or any of its authorized agents as soon as practicable. Another requirement is that no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with *all the terms of the policy.*

Article 5546, V.A.T.S., provides in part as follows:

"No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation

fixing the time within which such notice shall be given at a less period than ninety days shall be void, and when any such notice is required, the same *may be given to the nearest or to any other convenient local agent of the company requiring the same.*" (Emphasis ours.)

We will first examine the evidence to determine whether the jury's finding that notice of accident was given as soon as practicable is supported by the evidence.

Notice was given within 16 days without dispute and the record is replete with evidence concerning the circumstances under which plaintiffs were laboring during that period of time. These circumstances include, but are not limited to, the fact that the accident occurred on Saturday; the following day a call was placed to the local agent's home and information was conveyed to a member of his household that the air conditioning had blown up, and the request was made for the agent to call the plaintiffs; plaintiffs thus thought they had given immediate notice to defendant; that during the long weekend of the 4th of July frantic attempts were being made to get the unit repaired, replaced, or back in operation; that attempts were being made to minimize the business loss with temporary aid to the tenants by borrowing fans and window units and making them available to the tenants as far as the supply would last, and other efforts made to minimize the business loss such as housing some of the tenants in motels. This was during a record heat wave. Great numbers of tenants were moving out. Plaintiffs' call to the home of the local agent was never returned. On July 10 plaintiffs contacted an inspector who was employed by Hartford Boiler and Steam Company who had made the last annual inspection of the machinery to determine if it complied with state law. It also developed that this same inspector, a Mr. Massey, was also employed by New York Underwriters Insurance Company. That inspector came to the premises and made an inspection on July 10, the day he was notified. The insurance company contends it was prejudiced by the delay of 16 days in the giving of this notice. Mr. Massey testified that if he had been notified immediately he did not know of anything that would have been done differently from what had been done up to that time.

That portion of the notice requirement that notice must be given to the home office or to Houston, Texas, is void and unenforceable because same is in violation of the above quoted statute. *American Surety Co. of New York v. Blaine,* 115 Tex. 147, 277 S.W. 619 (1925); *American Nat. Ins. Co. v. Smith,* 97 S.W.2d 963 (Tex.Civ.App., El Paso, 1936, no writ hist.); *National Liberty Ins. Co. v. Herring Nat. Bank,* 135 S.W.2d 219 (Tex.Civ.App., Amarillo, 1939, writ dism., judgm. cor.); *International Brotherhood, etc. v. Rodriguez,* 193 S.W.2d 835 (Tex.Civ.App., El Paso, 1945, err. dism.); *Bankers' Reserve Life Co. v. Springer,* 81 S.W.2d 756 (Tex.Civ.App., El Paso, 1935, writ ref.); *Latham v. Mountain States Mutual Casualty Co.,* 482 S.W.2d 655 (Tex.Civ. App., Houston, 1st Dist., 1972, ref., n. r. e.).

█ We will next determine whether the giving of the notice within 16 days of the occurrence was a failure to give notice as a matter of law.

In *United States Fidelity & Guaranty Co. v. Pressler,* 185 S.W. 326 (Tex.Civ.App., Texarkana, 1916, writ dism.) that court held that the giving of notice within 16 days after the occurrence made the basis of the claim satisfied the requirement of an insurance policy that notice must be given *immediately.* The policy there involved was a liability policy.

The time element shown in the cases where notice was held not to be given as soon as practicable concerned periods of time greatly in excess of 16 days. *LeSage v. Utilities Insurance Co.,* 131 F.2d 536 (5th Cir., 1942) (2 years); *Hefner v. Fidelity & Casualty Co. of New York,* 160 S.W. 330 (Tex.Civ.App., El Paso, 1913, certified question answered 110 Tex. 596, 222 S.W., 996) (10 months); *Texas Glass & Paint Co. v. Fidelity & Deposit Co.,* 244 S.W. 113 (Tex. Com.App., 1922) (21 months); *Overland Sales Co. v. American Indemnity Co.,* 256

S.W. 980 (Tex.Civ.App., Galveston, 1923, no writ hist.) (14 months); *Southern Surety Co. v. Aronson,* 5 S.W.2d 629 (Tex.Civ.App., Galveston, 1928, no writ hist.) (130 days); *National Surety Corporation v. Diggs,* 272 S.W.2d 604 (Tex.Civ.App., Fort Worth, 1954, ref., n. r. e.) (104 days); *National Union Fire Insurance Company v. Bourn,* 441 S.W.2d 592 (Tex.Civ.App., Fort Worth, 1969, ref., n. r. e.) (44 days); *Edwards v. Ranger Insurance Company,* 456 S.W.2d 419 (Tex.Civ.App., Fort Worth, 1970, ref., n. r. e.) (46 days); *Klein v. Century Lloyds,* 154 Tex. 160, 275 S.W.2d 95 (1955) (32 days).

We hold the provision of the insurance policy requiring the giving of notice as soon as practicable was met and the jury's finding was supported by evidence of probative value, if same was not proved as a matter of law.

We further hold that the provision in the insurance policy which required the receipt of notice at the insured's home office, or Houston, Texas, is void because it is in contravention of the statute here involved.

This point of error is overruled.

■ By its 5th point of error defendant contends that the trial court erred in failing to include in Special Issue No. 2, the notice issue, or in its accompanying instruction, that for there to be timely notice the insurance company must have had a reasonable time and opportunity to examine the property and the premises of the insured before repairs were undertaken or physical evidence of the accident was removed.

Special Issue No. 2, which was answered in the affirmative, and its accompanying instructions, is as follows:

"Do you find from a preponderance of the evidence that the plaintiffs gave notice to the defendant, New York Underwriters Insurance Company, of the said accident as soon thereafter as was practicable?

"In answering this special issue you are instructed that the phrase 'as soon as practicable' means within a reasonable time following the accident, taking into consideration all of the facts and circumstances surrounding the occurrence. Notice may be given by the plaintiffs personally or by others on their behalf. Whether an act or omission is reasonable depends upon the exercise of ordinary care, which means the care that a reasonably prudent person would exercise under the same or similar circumstances."

The defendant objected to this issue "because by the instruction it is framed to a standard 'as soon as practicable', which is not the standard for notice provided by the policy. The policy provides that not only shall the notice be given as soon as practicable, but that it be given in such reasonable time that the Defendant company shall have an opportunity to examine the property and the premises of the insured before repairs are undertaken or physical evidence of the accident is removed. *Therefore, such issue fails to submit the proper standard of notice as required by the policy in question.*" (Emphasis ours.)

One of the notice provisions contained in the policy is as follows:

"When an Accident occurs, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. . . The Company shall have reasonable time and opportunity to examine the property and the premises of the Insured before repairs are undertaken or physical evidence of the Accident is removed, *except for protection or salvage.*" (Emphasis ours.)

The record reflects that the company who regularly serviced this air conditioning equipment advised plaintiffs the compressor had to be torn down and remanufactured and this would take from 8 to 10 days under the best of circumstances. The plaintiffs then requested a price for a replacement unit and were quoted the price of $18,000.00 to $20,000.00. They then contacted Mr. Joe Henry of Texas Distributors, Inc., who agreed to replace the compressor with equipment of like kind and quality for the sum of $10,640.00. This equipment was readily available.

Plaintiffs entered into a contract in writing with this company for the purchase of

this equipment. This contract contained the following clause: "The existing compressor and motor will remain your property" (the property of the insureds). This language was inserted in the contract at the insistence of the plaintiffs. There is testimony to the effect that Texas Distributors removed the old compressor and motor from the premises of the plaintiffs without the owners' knowledge or permission. The compressor was removed to a salvage place on North Houston Street in Fort Worth, Texas, where it was placed in storage and kept intact.

After Fred Massey, agent of the defendant, was notified of the accident on July 10, 1972, he had Larry Taylor, a service man employed by Texas Distributors, Inc., dismantle the compressor under Massey's direction while Massey inspected the various parts of the engine and equipment. The description of the compressor can best be understood if it is compared to an automobile motor. It weighed about 2,000 pounds and contained the usual crankshaft, connecting rods, bearings, cylinders, and rings, together with an oil pump, filter, and the other parts of an ordinary motor.

When the motor was thus disassembled it revealed that both main bearings were cracked, the crankshaft was damaged, and the existence of other damage. The insurance company's representative admitted that same was caused by accident.

The defendant requested no special issue concerning whether or not the company had had a reasonable time and opportunity to examine the property and the premises of the insured before repairs were undertaken or physical evidence of the accident is removed, *except for protection or salvage.*

It was not error for the trial court to overrule this objection for several reasons.

If the trial court had incorporated the language of the objection in the instruction given, such instruction would not have been a complete statement of the policy provision here involved. The language of the policy was not that of the objection because the words, "except for protection or salvage", contained in the policy was omitted from the objection. Neither did defendant include this omitted portion of the policy in its motion for new trial. Having failed to point out to the trial court the correct policy language, either by way of the objection, or in its motion for new trial, or in any other manner, it was not error for the trial court to overrule the objection.

The instruction given is very broad in its application to the facts of this case. In determining whether the notice was given as soon as practicable the jury was instructed to take into consideration all the facts and circumstances. They had this policy before them and could read each of its provisions.

In addition thereto the claimed omitted part of the given instruction, the absence of which is the basis of the objection, was contrary to the evidence. Plaintiffs sued defendant under endorsement No. 1 of the policy for the replacement of the compressor. That part of the policy provides that the defendant will pay for the actual cost of repair or replacement. The insureds did not repair and did not sue for repairs except for temporary repairs incurred as expediting expenses under a separate part of the policy which part of their cause of action was submitted to the jury by special issues 6 and 7 to which no point of error has been assigned. The defendant plead and proved cost of repairs under its theory that plaintiffs were only entitled to the lower cost, that of repair instead of replacement.

It was established by uncontroverted evidence by testimony from defendant's witnesses and disinterested witnesses that the machinery was not repaired, was replaced, was removed from the premises of the insureds by Texas Distributors, Inc., for salvage, to a salvage yard, was there stored intact, was inspected by the defendant, who was given not only an opportunity to inspect it but also the defendant was given all the time it desired to do the inspecting.

If there was any error, it was harmless. This point is overruled.

The insurance company, by its points of error Nos. 2, 3 and 6, asserts the trial

court erred in rendering judgment against it for any rental loss because the air conditioning system was fully repaired and operational before notice of accident was given by the insureds; and because the insureds failed to obtain factual findings regarding such loss for any specific day; and because of the court's failure to instruct the jury that they should not consider any rental loss accruing before notice of accident was given and that they should consider no rental loss accruing after the air conditioning was back on.

The use and occupancy coverage is contained in endorsement No. 3 consisting of two pages.

Item 4 thereof entitled "Business" requires the issuing agent to insert in the blank space following this word one of these words, "Production, Sales, Rents, or Income". The word "Rents" was inserted.

Under this endorsement the company agreed to pay a daily indemnity of $360.00 for loss of "rents collectible from the premises," or a partial loss of rents collectible from the premises with a maximum liability of $3,600.00.

This endorsement contains the following provisions:

Under "Exclusions" it provides: "If, following an Accident, any lease, license or order is suspended, lapsed or canceled, the Company shall not be liable for payment for any Prevention of Business occurring after the time when Business could have been resumed if said lease, license or order had not lapsed or had not been suspended or canceled."

Under "Commencement of Liability" the endorsement provides "for payment on account of an Accident shall commence at a time fixed by the arrival of the notice of Accident as provided in Condition B. If the Commencement of Liability is stated as determined with respect to 'Time of Accident', the Company shall not be liable for payment for Prevention of Business during any period before the twenty-fourth hour prior to such arrival of the notice."

Under "Definitions", "sales" is defined as the gross sales, "rents" means the rents collectible, and "income" means gross income.

The policy further provides: " 'Current Business' shall mean one-third of the total Business on the Premises during the three Days next preceding the Day of the Accident, or *during any other three Days selected by the Insured in any calendar week in the eight calendar weeks,* in each of which there has been any Business on the Premises, next preceding the Day of the Accident." (Emphasis ours.)

" 'Reduction in Business' shall mean the amount determined by subtracting the amount of the total Business on the Premises for each Day following an Accident from the amount of Current Business.

" 'Partial Prevention of Business' shall mean a decrease in Business on the Premises during part or all of a Day, sufficient to make the total Business for said Day less than Current Business. The liability of the Company for Partial Prevention of Business for said Day shall be determined by dividing the amount of Reduction in Business, caused by the Accident, for said Day by the amount of Current Business and then multiplying the result so obtained by the Daily Indemnity for said Day.

"      .    .   .

"Reduction of Payment

"E. As soon as possible after an Accident the Insured shall resume Business, in whole or in part, and shall utilize every available means, including surplus machinery, duplicate parts, equipment, supplies and surplus or reserve stock, which may be owned, controlled or used by the Insured, which might reduce the amount for which the Company would otherwise be liable under this Endorsement."

The printed sections of this endorsement and the policy in its entirety reveals it was designed to provide insurance coverage for all kinds of businesses which had daily sales or daily production, such as motels, hotels, retail establishments, and factories.

It is obvious that the insurance company intended to insure the plaintiffs for loss of rental income of its apartments as a result of this occurrence.

Plaintiffs introduced evidence from their business records showing its "'Current Business' . . . during any other three Days selected by the Insured in any calendar week in the eight calendar weeks, in each of which there has been any Business on the Premises, next preceding the Day of the Accident." They then offered evidence showing the loss of income as a result of the occurrence. Detailed testimony was adduced from the records showing the loss of income for each apartment from the date of the occurrence and for several months thereafter.

Based upon the evidence and this insurance coverage the court submitted the following issues to which issues the jury made the findings indicated therein:

"Special Issue No. 8:

"What do you find from a preponderance of the evidence to have been the average daily rental income received by the plaintiffs for the three days of April 29, April 30 and May 1, 1972?

"Answer in dollars and cents, if any.

"Answer: $700.00

"Special Issue No. 8–A:

"What do you find from a preponderance of the evidence to have been the daily loss of rental income resulting from the accident, if any, of June 24, 1972, during the months of July and August, 1972?

"In answering this special issue you are instructed that the 'daily loss of rental income' is the difference, if any, directly caused by the accident of June 24, 1972, between the average daily rental income found in answer to Special Issue No. 8 and the daily rental income reasonably collectible after the accident.

"Answer in dollars and cents, if any.

"Answer: $233.33".

Under the facts in this case the trial court correctly submitted these issues in a very practical manner. It was not neces-sary for the court to submit separately 62 issues inquiring of the jury the rental loss naming each calendar day for July and August, 1972.

■ If it should be argued that the calculation should begin on the date the notice was admittedly given on July 10, then the business records of the plaintiffs reflected that their loss of rental income from July 10, 1972, through August 31, 1972, far exceeded the sum of $3,600.00, the maximum amount provided by the policy, and no harm resulted to the insurance company. This is discussed later in this opinion.

It follows from what has been said that the insurance company's objections to the court's charge were properly overruled.

■ An exclusionary clause provides that if any lease, licenses or order is suspended, lapsed, or cancelled, the company shall not be liable for the payment of any prevention of any business occurring after the time when business could have been resumed if said lease, licenses, or order had not lapsed or had not been suspended or cancelled.

As heretofore stated this policy applied to all types of businesses. If the plaintiffs' license to do business had been cancelled, or if they had been lessees of the premises rather than the owners and the lessor had cancelled their lease because of such an accident, then any resulting loss is not recoverable. It is apparent that this clause was designed to apply to situations where the city, county, state, or federal government might cancel a permit for the insured to do business because of the conditions resulting from the occurrence. For example, in the City of Fort Worth, if the apartments were not maintained in accordance with the minimum housing standards required by a city ordinance and insureds were not permitted to rent the apartments until they were brought up to city standards, then such resulting rental loss would not be recoverable.

It is our opinion that this clause does not apply to the situation where the plaintiffs' lease with their tenants provided for the furnishing of air conditioning and when the

insureds were not able to furnish the air conditioning the tenants then move out with immunity from the plaintiffs successfully bringing suits to recover their rents. The rents would not then have been "collectible from the premises." The loss would have been the same if the plaintiffs had had no lease with their tenants and the tenants had simply moved out because the heat was insufferable.

When this clause is analyzed it is apparent that if a lease or some license is required to be maintained by the insureds in order for them to do business, or some order of a governmental authority prevented the insureds from doing business when they could have otherwise done business, then the insurance company would not be liable for any prevention of business occurring after the time when business could have been resumed except for such requirement.

■ It is well settled that insurance policy contracts are to be interpreted in such a manner that a reasonable meaning will be applied so as to give effect to the intent of the insuring agreement. *John Hancock Mutual Life Insurance Company v. Tuggle,* 303 F.2d 113 (10 Cir. 1962); *Fruhman v. NAWCAS Benevolent Auxiliary,* 436 S.W.2d 912 (Tex.Civ.App., Dallas, 1969, ref., n. r. e.); Couch on Insurance 2d, Vol. 1, Section 15:29; 32 Tex.Jur.2d 108, Insurance, Section 55.

■ It is also well settled that an insurance policy contract is to be interpreted, in cases of ambiguity, in favor of the insured and strictly against an insurance company in an effort to provide rather than defeat coverage, and when the policy is capable of two constructions, one of which will allow recovery and the other which would deny recovery, that construction will be given permitting the recovery. *Millers Mutual Fire Insurance Co. v. Murrell,* 362 S.W.2d 868 (Tex.Civ.App., Fort Worth, 1962, ref., n. r. e. at Tex., 367 S.W.2d 667); *Drinkard v. Group Hospital Service, Inc.,* 366 S.W.2d 637 (Tex.Civ.App., Dallas, 1963, ref., n. r. e.); *American Bankers Insurance Co. v. McDonald,* 369 S.W.2d 688 (Tex.Civ. App., Austin, 1963, error dism.); *Dillingham*

*v. American Security Life Insurance Co.,* 384 S.W.2d 920 (Tex.Civ.App., Houston, 1964, no writ hist.).

The most recent case involving these rules is *Ramsay v. Maryland Am. General Ins. Co.,* 533 S.W.2d 344 (Tex.Sup., 1976) where the Supreme Court held that it is a settled rule that policies of insurance "will be interpreted and construed liberally in favor of the insured and strictly against the insurer, and especially so when dealing with exceptions and words of limitation. . . When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery."

In the *Ramsay* case, the insured was killed while occupying a Navy-owned vehicle being used by the deceased for governmental and military purposes. In a suit for death benefits, the defendant insurance company contended that the insurance provided no coverage because the death was sustained in a commercial automobile which was excluded under the terms of the policy. The sole question presented was whether a Navy-owned vehicle was a "commercial automobile" within the meaning of the exclusion of the automobile policy, and both parties agreed that the term "commercial automobile" was not an ambiguous term. That court held that: ". . . uncertainty and ambiguity arise when the term is applied to a Navy-owned truck used exclusively for non-profit activities of the United States Government." That court held there was coverage.

It is our opinion that ambiguity resulted when the facts in this case are applied to the exclusionary language used in the policy here before us. It is our further opinion that coverage is not excluded because of the exclusionary language above quoted.

■ The insurance company did not plead that this loss was excluded because of the above exclusionary clause in the contract. No issue was requested in connection with this defense.

Such exclusionary language not having been plead, any defense based thereon is

considered waived by the insurance company. Rule 94, T.R.C.P.; *Texas Reserve L. Ins. Co. v. Texas Rehabilitation Ctr.*, 332 S.W.2d 403 (Tex.Civ.App., San Antonio, 1960, no writ hist.); *Cox v. Bankers' Guaranty Life Co.*, 45 S.W.2d 390 (Tex.Civ.App., Austin, 1931, no writ hist.).

In 32 Tex.Jur.2d (1962 ed.), Sec. 514, page 751, "Particular allegations—Defenses and conditions subsequent", it is stated:

"Facts that defeat recovery on the policy must be pleaded by the insurer. So, too, must be facts that will reduce the amount demanded by the insured. . . . it is the duty of the insurer to plead matters pertaining to conditions subsequent, exceptions, and prohibitory acts on which it wishes to rely."

As was stated by the court in *Commonwealth Casualty & Insurance Co. v. Bales*, 151 S.W.2d 844 (Tex.Civ.App., Texarkana, 1941, no writ hist.), ". . . there is good authority holding that: 'The burden rests upon the insurer to plead and prove such facts as would reduce the amount of the recovery below the maximum.' *Cox v. Bankers' Guaranty Life Co.*, Tex.Civ.App., 45 S.W.2d 390, 392, . . .."

See also *Fort Worth Mut. Benev. Ass'n v. Haney*, 17 S.W.2d 104 (Tex.Civ.App., Austin, 1929, writ dism.), holding in a suit on a life insurance certificate where the defendant insurance company contended that the insured was entitled to less than face amount of the policy the court said: "It is now well settled in this state that . . . where the certificate of insurance provides a maximum amount, with a limitation . . . it is incumbent upon the association to plead and to prove facts which would reduce the amount of the recovery below the maximum."

Here the appellant insurance company's contention on appeal with regard to the cancellation of leases, is the same as was found in the case of *Southern Life and Health Insurance Co. v. Simon*, 411 S.W.2d 765 (Tex.Civ.App., Beaumont, 1967, reversed on other grounds, 416 S.W.2d 793). There, in a suit on a limited accident industrial policy, the insurance company did not plead as a defense, an exclusion in the policy, concerning injuries with no visible contusions and wounds, and the court said that: "Such exclusion is a risk or cause coming within a particular exception to the general liability. Under Rule 94, Texas Rules of Civil Procedure, this defense was waived."

It is our opinion this defense was waived.

These points of error are overruled.

The insurance company, by its points of error Nos. 4 and 7, contends the trial court erred in rendering judgment for the loss occasioned by the accidental breakdown of the compressor because there was no evidence to support the jury's finding, the jury's finding was manifestly too large, and factually insufficient.

Mr. Head, an air conditioning contractor for 15 years who qualified as an expert, holds a Class A contractor's license, and is assistant manager of Air Service Company, testified that he had serviced the air conditioner in question prior to the occasion here involved. He was called immediately after the breakdown of June 24, 1972, he obtained a front seal and placed it in the air conditioner, it operated for about 5 hours, he went back to the apartment house and found the machinery had completely "locked up" and was virtually destroyed, the crankshaft was not running true and was vibrating and "wobbling", and there was major damage to the compressor. He testified that prior to the breakdown of June 24th the air conditioning equipment and compressor were in good condition and would have lasted for another 15 years except for this accidental breakdown. He called all the major suppliers of parts in Texas, the east coast, and in Wilkes-Barre, Pennsylvania, at the home office of the company that had bought out the manufacturer of this equipment, and all available manufacturer's representatives in an attempt to find parts that could be used in repairing the equipment. He was of the opinion that the equipment could be repaired for between $6,000.00 and $7,000.00 but it would require a minimum of 8 to 10

working days under the very best of conditions. He would have to work his men overtime and on weekends and pay them time and half for such night and weekend work.

Mr. Head also testified, in almost the exact words of the policy, that said breakdown necessitated repair or replacement; was not caused by depletion, deterioration, corrosion, or erosion of metal; was not caused by wear and tear; was not caused by leakage of any valve, fitting, shaft seal, ground packing, joint or connections; and the breakdown was caused by an accidental parts failure.

It is our opinion and we so hold that there was evidence to support the jury's finding of the reasonable cost of repair as being $6,500.00 and that such finding of the jury was in a sum that was not manifestly too large, was supported by the evidence, and was not against the preponderance of the evidence.

Defendant's points of error Nos. 4 and 7 are overruled.

The defendant, by its point of error No. 8, asserts the court erred in assessing interest on the property loss and expediting expenses from July 10, 1972, and on the rental loss from September 1, 1972, because these sums were not due on those respective dates.

The trial court's judgment assessed pre-judgment interest from July 10, 1972 (the date notice was admittedly received by the insurer), at the rate of 6% per annum on the $6,500.00, found to be the cost of repair, and on the $777.80 for temporary repair and expediting expenses. It likewise assessed pre-judgment interest at the same rate on the $3,600.00 lost rent item from September 1, 1972. The trial court then computed and liquidated that pre-judgment interest to specific sums and concluded, "The above and foregoing judgments shall bear interest at the rate of 6% per annum from date of this judgment until paid."

The general rule is that pre-judgment interest may be allowed as damages upon unliquidated demands, whether they arise out of breach of contract or out of tort, when the principal damages are determinable and established at a definite time, either by rules of evidence or known standards of value. There are exceptions to this rule which are not applicable to the case before us. This rule is also modified by the general proposition that interest begins to accrue upon a loss payable under an insurance policy when the principal of the sum becomes due under the terms of the policy.

In *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897) that court stated that it may not be technically correct to call this compensation "interest", because same is actually damages for the detention of money. The court stated: "Interest, as damages, may be allowed upon unliquidated demands, whether they arise out of a breach of contract or out of a tort. (Citing cases.) Interest, however, cannot be allowed upon damages arising from assault and battery, libel and slander, seduction, false imprisonment, nor for personal injuries and the like. (Citing cases.)" That court further stated that interest may be recovered for the detention of money, with some exceptions not here pertinent, from the date the damage, loss, or injury was sustained. This rule has been followed in *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955); *Hayek v. Western Steel Company*, 478 S.W.2d 786 (Tex.Sup., 1972); *McDaniel v. Tucker*, 520 S.W.2d 543 (Tex. Civ.App., Corpus Christi, 1975, no writ hist.); *Davidson v. Clearman*, 391 S.W.2d 48 (Tex.Sup. 1965).

The most recent case concerning this rule, *McDaniel v. Tucker*, supra, held that: "The rule in Texas is that pre-judgment interest may be allowed as damages upon unliquidated demands, whether they arise out of breach of contract or out of a tort, when the principal damages are determinable and established at a definite time, either by rules of evidence or known standards of value." That court further stated that the Supreme Court in *Texas Company v. State*, supra, and *Hayek v. Western Steel Company*, supra: ". . . reaffirmed the rule

announced in *Watkins v. Junker*, supra, and allowed pre-judgment interest on the sum due as damages for the detention of money from the due date of a liability."

When the effect of Art. 5546, V.A.T.S., is applied to the policy provision concerning the loss of rentals the policy then provides that the company will not be liable for payment for the prevention of business during any period before the 24-hour period prior to the giving of notice to the company as soon as practicable. This notice was given on July 10, 1972.

The jury found that the daily loss of rental income due to this accident was $233.33 per day for the months of July and August, 1972. Since the defendant did not receive notice until July 10, 1972, no rental income could be allowed prior to that date. From July 10, 1972, through August, 1972, plaintiffs lost $233.33 per day rental income for a total of 52 days, making a total loss of $12,133.16. The maximum coverage was $3,600.00. The judgment provided that interest would start accruing on the $3,600.00, the maximum coverage, beginning September 1, 1972. This was clearly not error because the defendant owned interest from July 10, 1972, and for each day of lost rental as the loss occurred on each succeeding day thereafter until a total loss of $3,600.00 had been sustained. This maximum was reached before September 1, 1972.

This portion of this multifarious point of error is overruled.

■ The judgment also provides for 6% interest from July 10, 1972, on the sum of $6,500.00, representing the cost of repair of the machinery which was insured under Section I of the policy. It also allowed interest on $777.80 from July 10, 1972. This amount was for temporary repair and expediting expenses covered under Section II of the policy. Each of these items of expense was incurred prior to the giving of the notice on July 10, 1972. These two items will be referred to as "these items" to distinguish them from the lost rent item discussed above.

The rule announced in *Watkins v. Junker*, supra, would here be followed except for the effect of the policy provisions hereinafter mentioned.

As a general proposition interest upon a loss payable under an insurance policy is not recoverable before, but is recoverable from the time when, the payment of the principal is due under the terms of the policy. 15 Couch on Insurance 2d, p. 432, Sec. 54:193 (1966 Rev.), (citing numerous Texas cases); and 154 A.L.R. 1368. See also *Connecticut Fire Ins. Co. v. Fields*, 236 S.W. 790 (Tex.Civ.App., Amarillo, 1922, no writ hist.).

The insurance contract before us fixes no time for payment of the proceeds of the policy for these two items. We then look to the policy to determine if any language is used therein which affects the time for payment of these two items.

The insuring agreement, together with Section I, provides that, subject to the conditions, the defendant agrees to pay for the loss on the machinery; and Section II provides, subject to the conditions, the defendant agrees to pay for the temporary repairs and expediting expenses.

The general conditions, as distinguished from the conditions contained in Endorsement No. 3, provide in part in Section 9 that the insured shall make proof of loss.

Therefore, until proof of loss is made, waived, or excused, no sum is then due or payable.

The giving of the proof of loss as plead by plaintiffs was not denied by pleadings under oath as required by Rule 93(m), T.R. C.P. The giving of the proof of loss is therefore admitted.

The record and pleadings are silent concerning the date proof of loss was made. It follows that the making of the proof of loss cannot establish the date these two sums here involved became due and payable.

Interest as damages sustained before judgment, under the facts in this case, began to accrue on the date the defendant first denied liability. This occurred on Au-

gust 7, 1973, when defendant filed its original answer denying liability.

The following cases are authority for this legal conclusion: *Fort Worth Lloyds v. Hale,* 405 S.W.2d 639 (Tex.Civ.App., Amarillo, 1966, writ ref., n. r. e.); *Aetna Casualty and Surety Company v. Clark,* 427 S.W.2d 649 (Tex.Civ.App., Dallas, 1968, no writ hist.); *Southern Underwriters v. Jones,* 13 S.W.2d 435 (Tex.Civ.App., Waco, 1929, error ref.); *People's Nat. Fire Ins. Co. v. Texarkana Nat. Bank,* 60 S.W.2d 254 (Tex.Civ. App., Eastland, 1933, no writ hist.); *Crutchfield v. St. Paul Fire & Marine Insurance Co.,* 306 S.W.2d 948 (Tex.Civ. App., Fort Worth, 1957, no writ hist.).

It is our opinion and we hold under the facts in this case that interest on these two items at the rate of 6% per annum began to run from the date the insurance company first denied liability by filing its answer denying liability.

This part of defendant's point of error No. 8 dealing with interest on the cost of repairing the property loss and the cost of temporary repair and expediting expense is sustained.

■■■ By its point of error No. 9 defendant contends the trial court erred in allowing post-judgment interest on pre-judgment interest.

This point is overruled.

In *Davidson v. Clearman,* 391 S.W.2d 48 (Tex.Sup., 1965) the Supreme Court had before it a case in which plaintiff recovered judgment for the reasonable value of work performed and materials furnished by the plaintiff. The sum of $23,150.00 became due on February 15, 1962, when defendant moved into the house being constructed.

Although the Supreme Court did not specifically discuss the law here involved, it reformed the judgment and rendered judgment that plaintiff recover $23,150.00 plus interest thereon at the rate of 6% from February 15, 1962, until August 22, 1963 (the date of the judgment), in the sum of $2,110.52 for a total sum of $25,260.52. The Supreme Court then rendered judgment on the total sum including pre-judgment inter-

est and concluded this judgment as follows: "This last amount shall draw interest at the rate of 6% from and after August 22, 1963, until paid."

In *Lanpar Company v. Stanfield,* 451 S.W.2d 254 (Tex.Civ.App., Dallas, 1970, no writ hist.) that court stated: "Even though a judgment for a certain number of dollars may include principal debt, *interest,* attorney's fees, and in some cases statutory penalties, *the whole will nevertheless bear interest* at the rate of six per cent per annum on the *full amount from and after the date of judgment* (except in a certain situation not present here). Article 5069–1.05, V.A. C.S.; *Ligon v. E. F. Hutton & Co.,* 428 S.W.2d 434 (Tex.Civ.App., Dallas 1968, writ ref'd n. r. e.); *Manes v. J. I. Case Threshing Mach. Co.,* 295 S.W. 281, 283 (Tex.Civ.App., Eastland 1927, writ ref'd); *Carver v. J. S. Mayfield Lumber Co.,* 29 Tex.Civ.App. 434, 68 S.W. 711 (San Antonio 1902, writ ref'd); *American Nat. Ins. Co. v. Ellington,* 97 S.W.2d 983 (Tex.Civ.App., Dallas 1936, no writ)." (Emphasis ours.)

In 33 Tex.Jur.2d, p. 77, "Interest", Sec. 10, "—Amount on which computed", (1962 Rev.), the rule is stated: "A judgment for principal and interest may bear interest. Any claim that interest ought not to be allowed on that part of the judgment that is for interest is not sustainable. The interest due at the rendition of the judgment becomes incorporated into and is a part thereof, and there is no exception in the statute prohibiting interest on the whole."

In *Home Indemnity Company v. Mosqueda,* 473 S.W.2d 456 (Tex.Sup., 1971), in a suit to mature an award in a workmen's compensation case, that court stated: "The trial court should have rendered judgment in Camilio's favor: (1) for $12,600.00 *plus interest* thereon from the date suit was filed to the date of judgment at the rate of four percent per annum, compounded annually; (2) for the $7,922.00 penalty and attorney's fees; and (3) with the provision that the *entire judgment* would bear interest from its date until paid at the rate of six percent per annum." (Emphasis ours.) See also *American Savings & Loan Ass'n of*

*Houston v. Jones,* 482 S.W.2d 62 (Tex.Civ. App., Houston, 14th Dist., 1972, ref., n. r. e.).

It is our opinion and we hold it was not error for the trial court to allow interest for the loss of rental income from September 1, 1972, and the trial court should have allowed interest on the other two items from August 7, 1972, and then the judgment should have provided for interest at the rate of 6% per annum on the total of these sums until paid.

■ Plaintiff, by cross-point of error, asserts the trial court erred in rendering judgment in the amount of $6,500.00 instead of the amount of $8,500.00 as plaintiffs' damages in connection with their property damages because the jury found, upon competent evidence, that it was impractical to repair the unit. Therefore, the judgment should have been for the reasonable cost of replacement (which was done), rather than the reasonable cost of repair (which was not done).

The insurance contract as reflected by Endorsement No. 1 provides in part that the company will be liable for any repair or replacement but shall be limited to the lesser amount of the two.

Endorsement No. 3 concerning the loss of rentals provides in Section E that the insureds will do everything possible to minimize the loss or rentals.

The jury in response to Issue No. 3 found that it was impracticable, under the circumstances, for the plaintiffs to repair the damaged compressor.

Plaintiffs replaced the compressor for a cost of $10,640.00. The jury found in response to Issue No. 13 that such sum was a reasonable value of furnishing these goods and services at the time involved. The new compressor replaced a used compressor. The jury in answer to Issue No. 5 found that the reasonable cost at the time involved to replace the compressor with equipment of like kind, capacity, size and

quality was $8,500.00. The jury apparently made this reduction to compensate for the fact that the replacement was made with new rather than used equipment.

Plaintiffs contend that under all the facts and circumstances here involved and giving effect to the reduction in payment clause which required them to do everything possible to minimize the loss of rents and because it was impracticable to repair the old unit it was error for the trial court to refuse to render judgment for them in the sum of $8,500.00 instead of the cost of repairs in the sum of $6,500.00.

The reduction of payment clause in Endorsement No. 3 does not contain any provision that would alter the language of Endorsement No. 1 so as to include the right of plaintiffs to replace the machinery if it were impractical to have it repaired. The plaintiffs are bound by the terms of limitation contained in Endorsement No. 1.

The court did not err in rendering judgment for the cost of repair, rather than the cost of replacement.

This cross-point is overruled.

That portion of the judgment providing for interest on the sums of $6,500.00 and $777.80 from July 10, 1972, to date of judgment, is modified and judgment as modified is here rendered that Harold W. Coffman and Ollie M. Coffman do have and recover judgment against New York Underwriters Insurance Company in the amount of $7,277.80 (the total of these sums), together with interest thereon at the rate of 6% per annum from August 7, 1973 (the date defendant denied liability), to June 5, 1975 (the date of the judgment). The total of these sums including interest to the date of judgment shall bear interest at the rate of 6% per annum from June 5, 1975, until paid.[1] The part of the judgment taxing trial court costs is affirmed.

All costs of appeal are assessed against New York Underwriters Insurance Company.

1. Article 5069–1.05, V.A.T.S., has been amended effective September 1, 1975. Since that date judgments, with the exception stated therein, bear interest at the rate of 9% per annum until paid.

We have carefully examined this entire record, each point of error and cross-point of error asserted, and fail to find reversible error reflected therein. We modify the trial court's judgment only to the extent indicated above, and as modified, affirm the same.