## DONALDSON et al. v. MEYER et al.*
### (No. 525–3991.)

(Commission of Appeals of Texas, Section A. May 7, 1924.)

**1. Husband and wife ⬅⟹272(3)—Statute providing that community property passes to survivor when spouse becomes "insane" limited to cases of judicially declared insanity.**

In view of Rev. St. 1879, arts. 2165–2167, as amended by Acts 23d Leg. (1893) c. 68, Rev. St. 1911, art. 3593, providing that, where husband or wife becomes "insane," common property passes to survivor, and no administration of estate is required, is limited to cases where insanity has been judicially declared.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insane—Insanity.]

**2. Insane persons ⬅⟹66—Land of insane person held subject to sale for amount of loan expended for necessaries.**

In action to rescind sale of land by insane person, where note received in part payment by vendor was in same transaction pledged by him as collateral to third person furnishing part of purchase money upon which furnishing deal depended, held, that land, though homestead, and under Const. art. 16, § 50, exempt from forced sale, in view of equitable nature of action, was subject to sale to secure pledgee for moneys found to have been expended by vendor and wife for necessaries and money in their possession at time of trial.

**3. Interest ⬅⟹36(1)—Right of one loaning money to insane person as to interest on part applied to necessaries stated.**

Where right to recover sum used for necessaries from money loaned was not based on

contract for loan, but on equitable ground of recovery for money used by insane person for necessaries, interest was not recoverable at 8 per cent. rate, as provided by contract, but at legal rate of 6 per cent.

**4. Insane persons ⬅⟹98—Burden on lender to show money loaned to insane person used for necessaries.**

Burden of proof is on lender to show money loaned to insane person was used for necessaries.

**5. Insane persons ⬅⟹99—Lender of money to insane person held not injured by definition of "necessaries."**

Where issue was as to whether appellant was entitled to recover back money loaned to insane person on ground that it had been used for necessaries, held that, if definition by court of "necessaries" was too restrictive, appellant was not injured in view of failure of evidence to show that money was used for "necessaries," giving that word its broadest scope.

**6. Appeal and error ⬅⟹1052(6)—Refusal to exclude testimony held without harm where it could only affect issue found in favor of appellant.**

Where question was as to right of appellant to recover back money loaned to insane person on ground that it was applied to necessaries, admission of evidence as to means of support, if erroneous, held not harmful where only issue it could have affected was found in favor of appellant.

**7. Appeal and error ⬅⟹1052(6)—Refusal to exclude testimony that wife did not understand transaction sought to be rescinded held without harm.**

In suit by insane person to rescind land sale, where testimony of wife that she did not understand transaction could not affect jury's finding on special issues except one which was found for defendant, refusal to exclude was without harm.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by D. A. Meyer, by I. B. Meyer, next friend, and others, against Henry B. Jones and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (248 S. W. 777), and defendant John J. Donaldson and others bring error. Reversed and rendered conditionally.

T. J. Murray, Don A. Bliss, and Leonard Brown, all of San Antonio, for plaintiffs in error.

Bickett & Bickett, and Hal Browne, all of San Antonio, for defendants in error.

CHAPMAN, J. D. A. Meyer and wife, Louise Meyer, owned 14 acres of land near a negro section in the city of San Antonio, upon which they lived, and which was community property and their homestead. D. A. Meyer and one L. Jones, a negro, reached an agreement that Meyer would sell the land to Jones, and that Jones would put the land

on the market as a negro addition in the town of San Antonio. L. Jones had no money, but Meyer and his wife insisted that they must have some money in the transaction. D. A. Meyer and L. Jones, took up with T. J. Murray the matter of one of Murray's clients, one Donaldson, furnishing $5,000 of the purchase money. An agreement was reached among all the parties, and on November 4, 1918, D. A. Meyer and wife conveyed the land to Henry B. Jones, a son of L. Jones, for a consideration of two vendor's lien notes, one for $10,000 and one for $11,-000, with the provision in the deed that the lien retained to secure the payment of the $10,000 note should be paramount to the lien to secure the payment of the $11,000 note, and D. A. Meyer, on the same date, executed in favor of John J. Donaldson a note for $5,000, which provided that it was secured by the $10,000 note given by Henry B. Jones to D. A. Meyer, and on the same date Henry B. Jones and wife executed to T. J. Murray a deed of trust authorizing said Murray to sell the Meyer land in the event of default of payment of the $10,000 note executed by Henry B. Jones in favor of D. A. Meyer, and on the same date a rental contract was entered into between L. Jones and D. A. Meyer which provided that Meyer should remain in possession of the land and pay therefor a rental of $35 per month to be credited on the $11,000 note, said lease to remain in full force and effect until the said L. Jones paid the two notes that day given for the Meyer property, and providing further that, if L. Jones should sell the property at a price agreeable to D. A. Meyer and Louise Meyer, the lease should then be terminated by 30 days' notice in writing. On November 10, 1918, D. A. Meyer transferred the $10,000 note to John J. Donaldson as collateral security for the payment of the $5,000 note. All of these transactions, except the transfer of the $10,000 note, occurred at the same time and place and on the same day Henry B. Jones conveyed the land to his mother, Mary K. Jones, Meyer and his wife remained in possession of the property. Mrs. Louise Meyer claims that she knew nothing of the loan from John J. Donaldson.

A short time after default was made in the first semiannual payment of interest on the two vendor's lien notes, D. A. Meyer by F. B. Meyer, next friend, and Louise Meyer brought suit to cancel all the instruments above set out, and to declare the whole transaction of no force and effect, for the reason that the whole transaction was a simulated one for the purpose of placing a mortgage on their homestead, and for the further reason of the mental incapacity of D. A. Meyer at the time of the transaction. Defendant Donaldson denied the allegations of a simulated transaction and mental incapacity, and pleaded that the $5,000 furnished by him was used for necessaries for Meyer and his wife, and by way of cross-action pleaded for his debt evidenced by the notes that he held, and for a foreclosure of his lien. The case was submitted to the jury on special issues, and in answer to special issue No. 1 they found that the property was used and occupied by Meyer and wife as a home at the time of the conveyance by them to Henry B. Jones. In answer to No. 2 they found that the conveyance from Meyer and wife to Jones was not a simulated and pretended sale for the purpose of creating a lien on the land, and in answer to No. 4 they found that D. A. Meyer was of unsound mind at the time he made the deed, and in No. 5 they found that D. A. Meyer did not have sufficient mental capacity to know and understand the nature and result of the transaction in executing the deed to Jones; to No. 6, that $2,800 of the money furnished by Donaldson was used by Meyer and wife for necessaries. It was agreed that Meyer and wife had $200 of the Donaldson money on hand at the time of the trial. The court gave judgment canceling all the written instruments that in any way affected the rights of D. A. Meyer and wife, and divested the title to the property out of all defendants and vested same in D. A. Meyer and wife. J. J. Donaldson was given a personal judgment against D. A. Meyer for the sum of $3,000 with 6 per cent. interest from November 4, 1918. Judgment of the trial court was affirmed by the court of Civil Appeals at San Antonio. 248 S. W. 777.

[1] Plaintiff in error John J. Donaldson in his first assignment takes the position that this transaction comes within the provisions of article 3593 of the Revised Civil Statutes, wherein it is provided that, where the wife or husband becomes insane, having no child or children, and no separate property, the common property passes to the survivor charged with the debts of the community, and no administration thereon, or guardianship of the estate of the insane wife or husband, shall be necessary. This article is a part of chapter 68 of the Acts of the Twenty-Third Legislature, and by referring to said chapter it can be ascertained what was meant by the Legislature in the use of the words "or becomes insane." The article referred to is article 2165 of said chapter 68, and in article 2166 of said chapter the identical words "or becomes insane" are used in the following way: Where the wife dies or becomes insane, leaving a surviving husband and child, * * * the husband shall have exclusive management, control, and disposition of the community property, etc. Article 2167 of said chapter provides that the husband shall, within four years after the death of the wife, or her being declared insane as provided by law, when there is a child or children, file a written application, etc., which clearly shows that the term "becomes insane" as used by the Legislature in this

chapter meant when the husband or wife was declared insane, as provided by law, and, no action in the courts having been taken as to the sanity of Meyer, this case does not come within the provisions of said article 3593.

[2] The third assignment of error raises the most serious question in the case, that is, whether the land should be subjected to sale to secure Donaldson in the payment to him of the $2,800 found by the jury to have been expended by Meyer and wife for necessaries, and the $200 found to be in possession of Meyer at the time of the trial.

In the case of Pearson v. Cox, 71 Tex. 246, 9 S. W. 124, 10 Am. St. Rep. 740, the question was as to whether, in a suit for rescission of a sale of property, a part of which was a homestead, on the ground of insanity of the husband, the homestead should be subjected to sale to secure the purchaser for purchase money paid by him and spent by the family of the insane person for necessaries, and Justice Walker, in discussing that issue, used the following language:

"The widow, as such, as to the homestead, had nothing in law to complain of. She had duly acknowledged the deed for it; she had little equity, for she and her children had received the benefits of the sale. As legal representatives of the deceased, they were entitled to insist upon their right to reclaim the land. This right must be exercised subject to the equities of the transaction; yet it exists, regardless of the fairness of the sale or of the adequacy or inadequacy of the price received. The equities of the purchaser demand that compensation be made him as well for the homestead as for the other property. The right to compensation as against the entire tract, as determined in the decree, was only an application of the ordinary rules followed in proceedings for rescission of the contracts. This does no wrong to the complainants, for they have the price, to be returned; it restores to Cox his money when he loses the land. We conclude, therefore, that in avoiding the contract with Cox he was entitled to have his money, as well for the homestead as for the other property. The verdict, therefore, worked no injustice to appellants. The decree, however, should have ordered sale of the land upon failure to pay the one thousand seven hundred dollars and twenty-two cents into court."

Under the facts of this case we can see no reason why Donaldson would not be entitled to the same equities to secure him in the payment of money furnished by him to Meyer in the transaction that he would have had he been the purchaser. The whole transaction depended on Donaldson furnishing $5,000 of the purchase money, and the deal would not have been consummated if Donaldson had not furnished this money. The making of the deed to Henry B. Jones by Meyer and his wife, the execution by Henry B. Jones of the two vendor's lien notes, and by Henry B. Jones and wife of the deed of trust to T. J.

Murray, the execution by D. A. Meyer to Donaldson of the $5,000 note secured by the $10,000 vendor's lien note, and the rental contract between Meyer and wife and L. Jones, were all executed at the same time and place. All of the instruments were in proper form and were acknowledged in due form by the parties. The two vendor's lien notes executed by Henry B. Jones were payable to D. A. Meyer. This was a voidable and not a void transaction, and the whole of it would have been legal if Meyer had been sane. Donaldson gave up his $5,000 in good faith, upon the $10,000 note being transferred to him by Meyer as collateral, and which Meyer had the legal right to transfer except for his mental condition. There can be no question but that Meyer and wife would have to do equity as to the $200 they had on hand at the time of the trial before they could ask for a rescission of the sale, and we have been unable to find any difference in the rule as to money on hand and that spent for necessaries. We believe that under the rule stated in Pearson v. Cox the trial court should have subjected the land to sale to secure Donaldson for the $3,000 in the event that amount was not paid into the court within a reasonable time.

We are aware of the provisions of section 50, art. 16, of the Texas Constitution to the effect that a homestead shall be exempt from forced sale, but in this case the plaintiffs are asking the equitable powers of the court to restore to them that which they have conveyed by deed signed, and acknowledged in due form by both husband and wife, and which on its face conveys the homestead with all the solemnities required by law, and which would be absolute except for the intervention of the equitable powers of the court, and before they can invoke that power they must do equity by restoring that which they have obtained by their acts and used for necessaries.

[3] In the fifth assignment of error it is claimed that Donaldson was entitled to interest at the rate of 8 per cent. instead of 6 per cent. on the money that he furnished Meyer and his wife, and which had been used by Meyer and wife for necessaries. The right of Donaldson to recover the $3,000 used by Meyer and wife as necessaries is not based on the contract that Meyer entered into, it having been ascertained that he was incapable of entering into a binding contract, but the relief given Donaldson is on the equitable ground that he is entitled to recover the money he had paid to Meyer, and which had been used by Meyer and his wife for necessaries, and, the right to recover not being based upon any contract of Meyer, then Donaldson could not recover the rate of interest mentioned in the contract, but could recover only the legal rate of 6 per cent.

[4] In the ninth assignment the position is taken that the burden of proof was not on

. Donaldson to show how much of the money in question was used by the Meyers for necessaries. We find that the decisions held contrary to' the contention of plaintiffs in error. Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849; Williams v. Sapicha, 94 Tex. 430, 61 S. W. 115.

[5] The tenth assignment of error complains of the definition used by the trial court as to the term "necessaries," which is as follows:

"The term 'necessaries' includes those things without which the individual cannot reasonably exist, and which are useful and suitable and necessary for his support, use, and comfort, taking into consideration his state and condition in life."

This is the definition of "necessaries" for a case of this kind given in 22 Cyc. 592; but, if this definition should be held to be too restrictive under the facts of this case, then plaintiff in error could not be injured by it, for the reason that the burden of proof was on him to show what portion of the Donaldson money was used by Meyer and wife for necessaries. The facts of the case failed to show that $2,000 of this money was used for necessaries, even under the broadest terms that could be applied to the word "necessaries."

[6] The eleventh assignment complains of the refusal of the trial court to exclude the testimony of one Boleyn that he and his child had boarded with Mrs. D. A. Meyer and paid her so 'much a month and that if it wasn't for that witness they did not know what would become of D. A. Meyer and Mrs. 'Louise Meyer because that D. A. Meyer and Mrs. Louise Meyer, had no visible means of support except what was paid them for board, and that what was paid them for board supported the family; the objection to this testimony being that it was irrelevant and immaterial, and calculated to be prejudicial to the rights of plaintiff in error. We do not see how this testimony could have affected the answer of the jury to any 'of the special issues, unless it could possibly have influenced them in their answer to special issue No. 2, and that question was answered in favor of plaintiff in error; therefore he cannot complain as to this.

[7] In the twelfth assignment plaintiff in error complains of the refusal of the trial court to exclude from the evidence the testimony of Mrs. Louise Meyer that she did not understand the terms of the trade with Jones. Plaintiffs in the court below in their allegation as to fraud plead that she did not understand the trade, and this testimony could not have affected the findings of the jury on any of the special issues, except special issue No. 2, and this issue was answered in favor of plaintiff in error. The questions raised in the other assignments are disposed of by those herein considered.

We recommend that the judgment of the district court and that of the Court of Civil Appeals be reversed, and that judgment be here rendered as given by'said courts, save that if plaintiffs below, that is, .Meyer and wife, fail within six months to deposit with the clerk of the district court, for benefit of defendant Donaldson, the sum of $3,000, with interest from November 4, 1918 at 6 per cent., then order of sale shall issue for the sale of the land in controversy in this suit to satisfy said judgment in favor of defendant Donaldson, and costs of sale.

CURETON, C. J. Judgments of the district court and the Court of Civil Appeals are reformed, as recommended by the Commission of Appeals, and as reformed are affirmed.