PHILLIPS PETROLEUM COMPANY,
Petitioner,

v.

STAHL PETROLEUM COMPANY,
Respondent.

No. B–6813.

Supreme Court of Texas.

June 21, 1978.

Rehearing Denied July 26, 1978.

McGinnis, Lochridge & Kilgore, Lloyd Lochridge, Austin, Kenneth Heady and C. J. Roberts, Bartlesville, Okl., Jack Ritchie, T. L. Cubbage, II, and David B. McCall, Amarillo, for petitioner.

Stone, Stone & Chambers, John C. Chambers, Amarillo, for respondent.

DANIEL, Justice.

The question on this appeal is whether Phillips Petroleum Company, a purchaser of casinghead gas from Stahl Petroleum Company, owed interest on Stahl's portion of the increased prices which Phillips had collected from its interstate purchasers pending final approval of its rate increases by the Federal Power Commission. The trial court, without aid of a jury, rendered judgment that Phillips owed no interest on the delayed payments. The Court of Civil Appeals reversed and rendered judgment for Stahl for $14,094.12 interest on the delayed payments as of December 7, 1972, and for interest on that sum from December 7, 1972 to the date of judgment. Tex.Civ.App., 550 S.W.2d 360. We affirm the judgment of the Court of Civil Appeals.

Stahl is a leasehold owner and producer of natural and casinghead gas in the Panhandle Field of Texas. Phillips is engaged in the production, purchase, transportation and sale of gas in both intrastate and interstate commerce. Under the terms of Stahl's contract with Phillips [1] dated December 5, 1957, it was agreed that Phillips would purchase casinghead gas owned or purchased by Stahl from certain wells located in Gray County. The purchase price to be paid by Phillips for the gas delivered to it by Stahl was based on a percentage of the "weighted average price received" by Phillips from sales of gas from the Panhandle Field to third parties. Exact terms of the relevant portions of the contract and details concerning the proceedings below are set forth in the opinion of the Court of Civil Appeals. We shall repeat only so much thereof as is necessary for determination of this appeal.

The payment provision of the contract required that payment for all gas delivered each month be made not later than the last day of the succeeding month. There was no provision for Phillips to withhold any portion of the monthly payments attributable to Phillips' receipts from price increases which had not been approved by the Federal Power Commission (FPC); nor was there any provision that such receipts should be excluded from the "weighted average price received" by Phillips pending FPC approval. Neither was there any provision for payment of interest on delayed payments.

The contract was made subject to all valid statutes and rules and regulations of any duly constituted federal or state regulatory body having jurisdiction. However, Phillips concedes that there was no statute or rule preventing it from making payments to its royalty owners and suppliers based upon the increased prices received by Phillips pending FPC approval or disapproval. Such payments would, of course, be subject to proportionate reimbursement on any refunds which Phillips was obligated to make in case of subsequent FPC disapproval. The parties further agree that the terms of the contract relating to price and payment are not ambiguous, and that the question before us should be decided as a matter of law. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex.1962); *Tower Contracting Company v. Flores*, 157 Tex. 297, 302 S.W.2d 396 (1957).

Prior to the execution of the Stahl contract, the Supreme Court of the United States had held in *Phillips Petroleum Company v. Wisconsin*, 347 U.S. 672, 74 S.Ct.

[1]. The original contract was with Stahl's predecessor, Panhandle Gas Compression Company. Since Stahl has succeeded to all rights of Panhandle and was treated as the party at interest for all purposes, the agreement will be referred to herein as the Stahl contract.

794, 98 L.Ed. 1035 (1954), that the Federal Power Commission has jurisdiction under the Natural Gas Act, 15 U.S.C. § 717 et seq., to regulate well-head prices of natural gas sold in interstate commerce, and that Phillips' gas sales in interstate commerce were subject to such jurisdiction and regulation. Also, prior to the Stahl contract, Phillips had filed numerous applications with the FPC for blanket price increases on interstate sales of gas transported to its customers from the Panhandle Field. Rather than waiting for approval by the FPC of proposed price increases, the Natural Gas Act allows a pipeline company to begin collecting from its purchasers the proposed increased prices after thirty days' notice, 15 U.S.C. § 717c(d), unless the FPC suspends the operation for not longer than five months. 15 U.S.C. § 717c(e); 18 C.F.R. § 154.102. The FPC suspended a total of thirty-one proposed price increases relating to Phillips' interstate gas sales from the Panhandle Field. Thereafter, Phillips was permitted to sell such gas at its filed rate increases upon posting a corporate obligation guaranteeing to refund with interest all or any part of such increases ultimately disapproved by the FPC as being unfair and unreasonable.

Over 18 years expired before the FPC approved in part and disapproved in part the price increases in FPC Opinion 586, which became final on October 30, 1972. During that time Phillips had over 900 lease and purchase contracts in which the monthly price agreed to be paid to its royalty owners and suppliers was based in part on a percentage of the prices received from its interstate sales. In some instances Phillips included these increased price receipts in calculating and making payments under similar contracts.[2] However, as to Stahl and many other suppliers, according to the numerous reported cases, Phillips remitted only on the basis of prices previously approved by the FPC. These were referred to as "firm" prices. They represented no portion of the increased prices which Phillips had been receiving from its interstate sales. The so-called "suspense funds" withheld by the company were placed in the general funds of the company and used during the 18-year period for general corporate purposes.

When the rate order became final on October 30, 1972, Phillips returned to its customers the disapproved ("refundable") portion of its receipts from the price increases. It then recalculated the payments due Stahl by including the approved ("sustainable") portion of such increased price receipts in its weighted average of all receipts. The difference between the amount already paid and the amount due upon this recalculation was $24,258.81. This sum was paid by Phillips to Stahl on December 7, 1972.

Almost three years thereafter, on September 11, 1975, Phillips filed this declaratory judgment action against Stahl. It sought a declaration that it was not liable for the sum paid to Stahl on December 7, 1972, and in the alternative that it was not liable for interest thereon, and, in no event, for interest prior to October 30, 1972, the date when approval of the sustainable portion of the price increases became final. The record does not show that Stahl had asserted any claim to interest prior to the time Phillips filed this suit.[3] However,

2. Such payments were conditioned on indemnity agreements assuring Phillips of the suppliers' agreements to reimburse Phillips with interest, for any portion thereof which the FPC might require Phillips to refund to its customers. See *Phillips Petroleum Company v. Adams*, 513 F.2d 355, note 10 at page 362 (5th Cir. 1975), and *Fuller v. Phillips Petroleum Company*, 408 F.Supp. 643 (N.D.Tex.1976). Whether Stahl could have compelled Phillips to remit such payments under their contract without receiving an indemnity agreement from Stahl is

not before us. Cf. *Ashland Oil & Refining Co. v. Statts, Inc.*, 271 F.Supp. 571 (D.Kan.1967).

3. In the meantime Phillips had lost three similar cases on the interest issue in the United States Court of Appeals for the Fifth Circuit on May 22, 1975, rehearing denied on June 18, 1975. *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (1975); *First National Bank of Borger v. Phillips Petroleum Company*, 513 F.2d 371 (1975); and *Phillips Petroleum Company v. Riverview Gas Compression Co.*, 513 F.2d 374 (1975). Writs of Certiorari were de-

Stahl promptly joined issue with a counterclaim against Phillips for interest on the sum paid from the respective dates on which Phillips received the funds.

The trial court held that Phillips was obligated to pay Stahl the $24,258.81 as the principal sum due under the contract, but it held that Phillips was not liable for any payment of interest thereon. Only Stahl appealed, arguing that it was entitled to $14,084.12 interest, figured at six percent per annum on the sum of $24,258.81 to December 7, 1972. Stahl also sought prejudgment interest on the $14,084.12 from December 7, 1972, to the date of the judgment.

*Interest Under the Contractual Obligation*

■ The general rule in Texas, originating in the common law, has long been stated that prejudgment interest cannot be allowed *eo nomine* (under that name) unless provided for by contract or statute. *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897); *Heidenheimer v. Ellis*, 67 Tex. 426, 3 S.W. 666 (1887). As shall be demonstrated later, in neither of these cases, nor in numerous other Texas cases, have the courts been consistent or rigid in applying the rule in a manner that would deny a party legal compensation for the use or detention of his money. See *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (5th Cir. 1975), and Texas cases therein and hereinafter cited. Phillips attacked the Circuit Court's opinion as being contrary to Texas law, contending that absent a specific contractual or statutory provision, no interest was due. The Court of Civil Appeals agreed that Stahl's right to interest depended upon the authority of an enabling Texas statute, and it proceeded to render an interest judgment for Stahl based upon the following statutes:

"Article 5069–1.01. Definitions

"(a) 'Interest' is the compensation allowed by law for the use or forbearance or detention of money; . . .."[4]

"Art. 5069–1.03. Legal rate applicable

"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made." [Effective Oct. 1, 1967, but identical with its predecessor, Article 5070.]

■ Phillips contends that the statute does not apply because the sum payable under its contract was neither ascertainable nor due and payable until the finality of the FPC's order on October 30, 1972. We disagree. The unambiguous terms of its contract provided the means for ascertaining the sums due and payable to Stahl each month. These payments for gas delivered by Stahl each month (to be made not later than the last day of the succeeding month) were to be based in part on "the weighted average price received" by Phillips from all of its sales of Panhandle Field gas to third parties during the preceding month. This weighted average price received by Phillips was based upon both intrastate and interstate sales, and there was no qualification or exception excluding any interstate price receipts which might be refundable if not approved by the FPC. It is not denied that these monthly sums were ascertainable on this basis and that they were actually ascertained and paid on such basis to other suppliers. See note 2, *supra*. The Court of Civil Appeals correctly concluded:

---

nied by the Supreme Court in all three of these cases on November 3, 1975. 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259. As to interest, the factual circumstances giving rise to those cases are identical in all material respects to the facts in the present case, but Phillips contended throughout that they were decided on an incorrect interpretation of Texas law.

4. A slightly different wording of the definition existed at the time the Stahl contract was executed, which read "interest is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." V.A.T.C.S., Article 5069, which was replaced on October 1, 1967, by the enactment quoted above. All statutory references are to Vernon's Annotated Texas Civil Statutes.

"At the time the contract was executed, Phillips, as permitted during the pendency of its applications for increases in the interstate commerce rates for its gas sales, was receiving from its purchasers and accepting as payment for its gas an amount of money in excess of the then established rates. Albeit the excess was subject to possible refund, none of the excess was contractually excluded from the 'price received' by Phillips and on which payment to Stahl was contractually based. Phillips candidly concedes that neither statutory or decisional law nor the rules and regulations of the Federal Power Commission prohibit Phillips from including the excess in the amount on which calculation of payment to Stahl was made. It naturally follows that the portion of the prices exceeding the then approved interstate commerce rate received by Phillips from its gas sales in the Panhandle Field was, under the plain meaning of the language of the contract, a part of the 'price received' on which the month-by-month payments to Stahl were to be based. Hence, within the meaning of the statute, the written contract is one ascertaining the sum payable, and interest is allowable on each unpaid sum which was due and payable monthly under the contract. And there is nothing in the contract to alter this legal consequence even though it later developed that Phillips was required to refund to its purchasers a portion of the purchase prices it has received." 550 S.W.2d at 366–67.

Phillips contends that this holding is subject to an interpretation that Stahl was entitled to receive and retain monthly payments based in part on price increases which were subject to disapproval by the FPC, without any obligation to make a proportionate refund to Phillips. We do not so construe the opinion, and we disavow any such interpretation. On the contrary, the Court recognized that the contract was subject to valid federal laws and regulations. Since any portion of the increased prices received by Phillips was subject to refund, with interest, to its purchasers if finally disapproved by the FPC, it follows as a matter of law that any portion of the "refundable money" which had been paid to Stahl under its contract was likewise subject to reimbursement with interest to Phillips. Thus, if Phillips had made its monthly payments to Stahl based on its percentage of the weighted average "price received" by Phillips during all of the years pending FPC action, the only amount necessary to be ascertained as between Stahl and Phillips after the FPC opinion became final on October 30, 1972, would have been the portion of Stahl's payments which were refundable, with interest, to Phillips. Only the "sustainable" remainder would have been retainable by Stahl, and having been paid when due, there would have been no issue concerning interest.

Phillips' concern over this literal interpretation of the unambiguous terms of the contract is understandable, but Phillips prepared the contract. It knew that its receipts from interstate sales were subject to regulation by the FPC. It would have been a simple matter for the contract to have provided that increased prices from interstate sales would not be figured in the "weighted average price received" until after approval by the FPC, if that had been the intention of the parties. Or, it could have been provided that the percentage of monthly payments based on unapproved interstate price increases would be withheld unless Stahl indemnified Phillips by a surety bond or other guarantee that Stahl would refund to Phillips, with interest, any portion of its payments attributable to price increases which were subsequently disapproved by a valid order of the FPC. See *Fuller v. Phillips Petroleum Company*, 408 F.Supp. 643 (N.D.Tex.1976), a case in which Phillips made full payments under such an indemnity agreement, with such payments being ascertained each month on precisely the same basis as contended for by Stahl under its contract. The Court of Civil Appeals correctly interpreted and applied the terms of the contract. It properly allowed interest on the delayed payments which Phillips had withheld until December 7, 1972.

*Interest Under the Equitable Doctrine For Use or Detention of Money*

Although the Court of Civil Appeals reached a correct result, we do not agree with its holding that Stahl's only right to recover interest was dependent upon an enabling statute. As heretofore indicated in note 3, supra, the U.S. Court of Appeals, 5th Circuit, applying what it understood to be Texas law, held under similar facts that Phillips is liable for interest on the delayed payments on an "elemental equitable principle" that "Phillips ought not to be able to use someone else's money as it pleases for ten years, thereby enjoying a very considerable benefit, and then pay nothing for the use of the money." *Phillips Petroleum Company v. Adams,* 513 F.2d at 368.[5] As to Texas Law, the Court said:

"A reading of all the relevant Texas cases convinces us that interest is awarded or refused in that jurisdiction only after a careful consideration of all the circumstances in the particular case, and that the Texas interest statute is sufficiently flexible to permit the courts to do equity. . . ." *Id.* at 366.

The Circuit Court concluded as follows:

" . . . Texas courts do not insist on statutory rigidity in the allowance of interest, for they realize that the right to interest is a marketplace concept and that the use of money is a mercantile privilege which should not go uncompensated, absent countervailing considerations. To exonerate Phillips from its interest obligation here would be to give the pipeline company an extracontractual lagniappe, for it is incontrovertible that Phillips has derived a very considerable benefit from the unrestricted use of the Adams family's money. Phillips may say that its possession and utilization of funds to which it had no pretense of claim was reasonable, or even that its actions were necessary, *but Phillips can-*

*not be heard to say that it is fair and equitable that it should enjoy such a financial advantage for so long, and pay not a cent for it."* (Emphasis added.) *Id.* at 370.

■ We agree, both as to Texas law and the equity of compensating Stahl for Phillips' use of money which it held and used. As to the funds attributable to payment for Stahl's gas, Phillips had no possible right or title. It was in the position of a stakeholder who used royalty monies which were held in suspense, *Kishi v. Humble Oil and Refining Company,* 10 F.2d 356 (5th Cir. 1925), without any permissive agreement such as was contained in *Gulf Pipe Line Co. v. Nearen,* 135 Tex. 50, 138 S.W.2d 1065 (1940). In *Kishi,* the court properly awarded interest on suspense funds, while in *Nearen,* an opposite result, based on provisions of the division order contract, was proper. In the present case Phillips knew that funds attributable to payment for Stahl's gas either would be paid to Stahl or refunded to its customers with interest. It made a conscious choice, without any permission or consent of Stahl, to comingle these so-called suspense funds with its general operating funds. Therefore, it should pay for the use of the sustainable portion of this money.

■ It is possible that the Court of Civil Appeals would have mentioned this additional equitable grounds of recovery had it not believed that this was foreclosed by the common law rule stated in *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897), and *Heidenheimer v. Ellis,* 67 Tex. 426, 3 S.W. 666 (1887), that interest cannot be allowed under that name unless provided for by statute. That common law rule is slightly less ancient than its predecessor, which held that all interest was unlawful and uncol-

5. For writ history and similar holdings in two other cases decided on the same date, see Note 3, *supra.* Accord: *Phillips Petroleum Company v. Grady Hazlewood,* 534 F.2d 61 (5th Cir. 1976); *Fuller v. Phillips Petroleum Company,* 408 F.Supp. 643 (N.D.Tex.1976); *Shutts v. Phillips Petroleum Company,* 222 Kan. 527, 567 P.2d 1292 (1977); *Gray v. Amoco Production Co.,* 1 Kan.App.2d 338, 564 P.2d 579 (1977); *Lightcap v. Mobil Oil Corp.,* 221 Kan. 488, 562 P.2d 1 (1977).

lectable.[6] In 1545, the allowance of interest was first sanctioned by statute in England, but there were rigid limitations to the statutory exceptions for subsequent centuries. 47 C.J.S. Interest § 2, p. 12. The common law became effective by statute in the Republic of Texas on March 16, 1840, and on the same date a statute became effective providing for interest in a manner quite similar to Article 5069–1.03, *supra*.[7] Since then, as stated by the Circuit Court in *Adams, supra*, the Texas courts have not insisted on statutory rigidity in the allowance of interest when necessary to permit compensation for the use or detention of one's money. Nonstatutory interest has been allowed most often under the name of "damages," measured by the legal rate of interest, while at other times it has been allowed in the name of "interest" itself.

For instance, in 1855, the Court held in *Close v. Fields,* 13 Tex. 623, that a defendant collecting money as the agent of the plaintiff was liable in damages for its detention, and that "the legal rate of interest is the safest criterion or standard of damages" in such cases. The Court continued: "The fact of the jury, in the verdict, calling it interest when it was damages, is no ground for reversal." To the same effect, see *Anderson v. Duffield,* 8 Tex. 237 (1852); *Commercial and Agricultural Bank v. Jones,* 18 Tex. 811 (1857); and *Murchison v. Payne,* 37 Tex. 305 (1872).

As heretofore indicated, *Watkins* and *Heidenheimer,* the two leading cases of this Court cited for the rule that prejudgment interest cannot be allowed under that name unless provided for by contract or statute, merely acknowledged the rule as a preliminary to approval of exceptions based upon equitable principles. In *Watkins,* the Court said:

"It is objected in this case that interest is a creature of the statute, and cannot be allowed upon unliquidated damages. It is true that interest, strictly speaking, exists only by statutory law, but it is likewise true that courts have recognized the fact that compensation for detention of that which is due on account of injury inflicted is an element of damages necessary to the complete indemnity of the injured party; *and the courts have, by analogy, adopted the legal rate of interest fixed by statute as the standard by which to be governed in assessing damages for the detention of money.* . . ." (At page 11, emphasis supplied.)

In *Heidenheimer,* the Court said, "It is frequently said in the decisions of the courts that interest is a creation of the statute. In a certain sense this is true; but as applied to one class of cases, the phrase is misleading." The Court listed various instances of money used by the debtor or holder in which indemnification was justified, and the Court said:

"Now, let it be conceded that the claim sued upon in this case is not a 'written contract ascertaining the sum payable,' provided for in article 2976 of the Revised Statutes, nor yet an open account, such as is mentioned in article 2977. It is a stated account to be paid in cash upon delivery of goods, the sale of which constituted its consideration, and which had been delivered when the accounting was had. Here is a manifest delinquency on part of the debtors, working a gross injustice to the creditors, and resulting in a wrong which cannot be compensated by any sum less than the principal and the interest on the debt from the time at which it ought to have been paid. . . ." (At page 667.)

Our holding that Stahl is entitled to legal interest on that portion of his money which was held in suspense and used by Phillips is

---

6. Early English common law held all contracts for interest to be void. 45 Am.Jur.2d, Interest and Usury § 3; 47 C.J.S. Interest § 2. Blackstone wrote that "the Canon law has proscribed the taking of any, the least, increase for the loan of money as a mortal sin." III Blackstone's Commentaries, 453–454 (Tucker Edition, 1803). *Hill v. George,* 5 Tex. 87, 91 (1849).

7. An Act to Adopt the Common Law of England, approved January 20, 1840, II Gammel Laws of Texas, 177; An Act to Regulate Interest, approved January 18, 1840, id. p. 182.

a mere extension of the equitable principles announced in *Watkins* and *Heidenheimer*. The only difference is that we treat interest for the use of money under these circumstances as an equitable exception to the "interest *eo nomine* " rule. In such cases, it is permissible but no longer necessary to continue the round-about method of allowing indemnity under the name of damages measured by the legal rate of interest. Without being as explicit, more recent cases have charted the way with equitable exceptions of this nature. In *Donaldson v. Meyer,* 261 S.W. 369 (Tex.Comm'n App.1924, judgmt. adopted), the Court allowed recovery for the use of money without statutory authority and without a valid contract, saying:

> " . . . The right of Donaldson to recover the $3,000 *used by* Meyer and wife as necessaries is not based on the contract that Meyer entered into, it having been ascertained that he was incapable of entering into a binding contract, but *the relief given Donaldson is on the equitable ground that he is entitled to recover the money he had paid to Meyer, and which had been used by Meyer* and his wife for necessaries, and, the right to recover not being based upon any contract of Meyer, then Donaldson could not recover the rate of interest mentioned in the contract, *but could recover only the legal rate of 6 per cent.*" (At page 371, emphasis supplied.)

In *City of El Paso v. Nicholson,* 361 S.W.2d 415 (Tex.Civ.App.1962, writ ref. n. r. e.), again without enabling statute or contract, it was held that Plaintiff was entitled to collect interest for the use of his money by the City. The Court said:

> "Up until the money was taken from the police, it was a police action and it had not been determined in any way that the money had illegally been taken; but on January 16, the City of El Paso received this money *and put it to use,* apparently, as it was put into the General Fund. *We think interest, therefore, is proper and allowable, not as a punitive measure, but merely because the City had the use of this sum of money by virtue of*

*the action of the alderman . . . ."* (At page 418, emphasis supplied.)

Stahl cites language in *Cox v. Davison,* 397 S.W.2d 200 (Tex.1965), as inferring that an equitable claim to interest may be proper under certain circumstances, although it was not allowed in that case. On the other hand, it has been suggested that *Cox* may preclude an award of interest in the instant case. The cases are distinguishable. In *Cox,* the contesting parties were cotenants in mineral producing properties. The nonconsenting cotenants, who refused to join in a drilling program, sued the producing cotenants for an accounting on their proportionate part of the production. The producing cotenants sought credit for six percent interest on the nonconsenters' proportionate share of the costs advanced for the drilling program. This Court held that no interest was due because of the peculiar legal relationship of the parties. Since the nonconsenting cotenants had not agreed to the expenditures, the Court held that no debt existed upon which the producing cotenants could recover a personal judgment for reimbursement; their reimbursement being limited to recoupment from the nonconsenters' share of the production. The Court said "interest is an incident of debt and is not payable in the absence of an obligation binding one person to pay money to another. . . . The obligation may be expressly set forth in a contract or it may be implied by law." It held that neither circumstance existed in *Cox v. Davison.*

In the instant case there is an obligation binding Phillips to pay money to Stahl for its gas; a debt upon which Stahl was entitled to a personal judgment. Therefore the conditions laid down in *Cox v. Davison* for the recovery of interest are present here. Our decision in this case applies only to facts under which the obligor was holding and using money of the obligee without its consent. As heretofore indicated, we agree that the Circuit Court correctly applied Texas law in the *Adams* case by awarding interest upon equitable grounds, thus preventing undue enrichment of Phillips because of its unauthorized use of an obligee's

money while ostensibly holding it in "suspense."

### Interest Upon Interest

■ The sum paid by Phillips to Stahl on December 7, 1972, was $24,258.81. It was conceded that interest at six percent per annum on such amount totaled $14,094.12 as of December 7, 1972. The Court of Civil Appeals allocated the $24,258.81 payment first to past due interest ($14,094.12), leaving $10,164.69 to apply on the principal debt. This allocation reduced the principal to $14,094.12, upon which the Court adjudged interest at the statutory rate of six percent per annum. Phillips complains of this allocation. In the absence of an agreement to the contrary, this type of allocation is usually proper. *Community Savings and Loan Association v. Fisher,* 409 S.W.2d 546, 550 (Tex.1966).

In the present case, however, we agree with Phillips that the allocation was error. It was not in sought in Stahl's pleadings, and at trial both parties treated the $24,-258.81 as payment of the principal sum of the delayed payments. It was upon "rollback" audits of that sum that interest at six percent per annum was shown to total $14,-094.12 as of December 7, 1972. This amount of interest, plus $2.3168 per day from December 7, 1972, to the date of judgment is what Stahl sought in the lower courts.[8]

The error in allocation was harmless, because it did not change the amount of additional interest which Stahl was entitled to recover under its pleadings and proof. Whether the $14,094.12 was the remaining principal or the accrued interest due as of December 7, 1972, interest thereon at six percent per annum amounted to $3,011.84 on the date of judgment. That is the precise sum which the Court of Civil Appeals included in its total judgment of $17,105.96.

Implicit in Phillips' point of error relating to allocation is the argument that Stahl is not entitled to prejudgment interest on the sum of interest which had accrued as of December 7, 1972. There is no clear consensus in the Texas cases which have considered this question. The conflict and the apparent majority view was fully discussed in a decision awarding interest on interest under the same circumstances in the case of *Fuller v. Phillips Petroleum Company,* 408 F.Supp. 643 (N.D.Tex.1976).

Some of the confusion originated with the holding in *McDaniel v. Miller,* 317 S.W.2d 546, 549 (Tex.Civ.App.1958, no writ), that allowance of interest on interest was fundamental error. No authority was cited for the holding, but the case was cited and followed in at least two cases[9] before it was rejected in subsequent decisions. See *Lanpar Co. v. Stanfield,* 451 S.W.2d 254, 257 (Tex.Civ.App.1970, no writ), and *Ligon v. E. F. Hutton & Co.,* 428 S.W.2d 434, 440 (Tex. Civ.App.1968, writ ref'd n. r. e.).

■ We disapprove the above mentioned holding in *McDaniel v. Miller, supra.* When a definite sum of money is determined to have been due and payable at a date certain prior to judgment, the legal rate of interest has been allowed thereon from such date to the date of judgment. *Davidson v. Clearman,* 391 S.W.2d 48 (Tex.1965); *Ft. Worth & D. C. Ry. Co. v. Greathouse,* 82 Tex. 104, 17 S.W. 834 (1891); *Heidenheimer v. Johnston,* 76 Tex. 200, 13 S.W. 46 (1890); *Houston & T. C. R'y Co. v. M. L. Jackson,* 62 Tex. 209 (1884); *New York Underwriters Insurance Company v. Coffman,* 540 S.W.2d 445, 458 (Tex.Civ.App.1976, no writ); *International & G. N. R. Co. v. Dimmitt County Pasture Co.,* 5 Tex.Civ.App. 186, 23 S.W. 754, 756 (1893, no writ). We believe this to be the more reasonable rule for fully com-

---

8. The sum of $2.3168 per day was shown to be the correct calculation of daily interest on the $14,094.12 at the rate of six percent per annum. It is undisputed that this daily interest from December 7, 1972 to the date of the judgment on June 28, 1976, amounted to $3,011.84.

9. See *Brooklyn Union Gas Co. v. Transcontinental Gas Pipe Line Corp.,* 201 F.Supp. 679, 683 (D.C.Tex.), affirmed in *Socony Mobil Oil Co. v. Brooklyn Union Gas Co.,* 299 F.2d 692, 696 (5th Cir. 1962), cert. den. 371 U.S. 887, 83 S.Ct. 183, 9 L.Ed.2d 121 (1962); *E. G. Gasperson v. The Madill National Bank,* 455 S.W.2d 381 (Tex.Civ.App.1970, writ ref'd n. r. e.).

pensating one whose money has been detained by another. There is no good reason for an exception if the payment is due for accrued interest rather than for principal or damages. Thus, we hold that prejudgment interest was properly allowed on the $14,094.12 sum due Stahl from its accrual date on December 7, 1972, to the date of judgment. No question has been raised about the Court having allowed postjudgment interest on the entire judgment in accordance with Article 5069–1.05.

Accordingly, the judgment of the Court of Civil Appeals is affirmed.

Concurring opinion by POPE, J., in which BARROW and CHADICK, JJ., join.

POPE, Justice, concurring.

The court of civil appeals, whose judgment we affirm, holds that the contract between the parties constituted a basis for legal interest. This court also makes that reason the basis for its holding. Since the court reaches that conclusion, with which I agree, its dictum about equitable interest is unnecessary.

BARROW and CHADICK, JJ., join in this concurring opinion.