NUMBER
13-04-371-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

LANDMARK
ORGANIZATION, L.P.,                                                Appellant,

                                                             v.

DELPHINI CONSTRUCTION CO.,                                                     Appellee.

 

 

                On appeal from the County Court at
Law No.1

                                        of
Nueces County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 

 

 








Appellant, Landmark Organization, L.P., appeals from
the judgment of the trial court in favor of appellee, Delphini Construction
Company, in three issues:  (1) the trial
court committed reversible error by allowing the case to continue when a juror
failed to appear on time on the second day of the trial; (2) the trial court
erred in its calculation of prejudgment interest; and (3) the trial court erred
in its calculation of postjudgment interest. 
We affirm.

Background

This appeal originated as a claim for breach of
contract and quantum meruit.  Landmark, a
design builder, was the general contractor in the construction of two military
housing projects.  Delphini, a roofing
contractor, entered into a subcontract with Landmark to furnish the labor,
materials, and equipment necessary for the roofing, gutters and downspouts for
the projects.  

Landmark was allegedly dissatisfied with the work
performed by Delphini and eventually informed Delphini it was terminating the
contract.  Delphini then sued for breach
of contract and quantum meruit, alleging that Landmark=s mismanagement made it impossible for Delphini to
perform.  








The trial began on April 5, 2004, with a six-member
jury.  On the morning of the second day
of trial, one of the jurors failed to appear. 
A bailiff was eventually sent to the juror=s
home, but the juror could not be found. 
Delphini moved to go forward with the five remaining jurors; Landmark
objected and moved for a mistrial.  The
trial judge denied the motion, and trial proceeded with the five-member
jury.   After several minutes of
testimony regarding attorneys= fees, the absent juror appeared and informed the
court he had overslept.  The court then
instructed the jury to disregard the testimony heard during the missing juror=s absence and re-started the trial with all six jurors.  The witness still on the stand repeated the
testimony he had given in the missing juror=s
absence.  Following the conclusion of the
evidence, the jury unanimously found in favor of Delphini on all issues.  The court awarded Delphini damages, attorneys= fees, prejudgment interest and postjudgment
interest.  

Absent Juror

By its first issue, Landmark claims that the trial
court committed incurable reversible error when it denied Landmark=s motion for mistrial and allowed the trial to
continue with only five jurors in the absence of any evidence that the sixth
juror was disabled.

A trial court=s denial of a motion for mistrial is reviewed under
an abuse of discretion standard.  Till
v. Thomas, 10 S.W.3d 730, 734 (Tex. App.BHouston
[1st Dist.] 1999, no pet.).   Texas law
requires that county court juries be composed of six members.  See Tex.
Const. art. V ' 17; Tex. Gov=t Code Ann. ' 25.0007 (Vernon 2004).  A trial can be heard with less than a full
complement of jurors if a member of the jury is disabled from sitting.  See McDaniel v. Yarbrough, 898 S.W.2d 251,
252-53 (Tex. 1995).  Juror disability may
arise through a physical or mental incapacity that is more significant than
simple mental distress.  See id. at
253.  The trial court has broad
discretion in determining whether a juror is disabled. Id.  

Landmark argues that the trial court clearly erred
and abused its discretion in allowing the trial to continue because there was
no evidence that the missing juror was disabled.  In support of its argument, Landmark cites
the McDaniel opinion, in which the supreme court reversed the trial
court=s dismissal of a juror as disabled when the juror
claimed that inclement weather would keep her from returning to the
courthouse.  Id. at 251-52.  The supreme court held that a delay of this
nature did not qualify as a disability. 
Id. at 252.  








Delphini responds that once the missing juror
returned to the court, the trial judge properly instructed the jury to
disregard the morning=s testimony and insured that the testimony was
repeated before the full jury.  Delphini
also notes that the testimony in question only lasted for a few minutes,
consisted of Delphini=s own expert witness testifying as to attorneys= fees, and did not substantially affect Landmark=s ability to present its case to the jury. 

We agree with Delphini.  An appellate court must assume that a jury
properly follows the trial court=s instructions to disregard evidence, absent any
proof to the contrary.  See Turner,
Collie & Braden, Inc. v. Brookhollow, Inc., 642 S.W.2d 160, 167 (Tex.
1982).  The general rule is that an
instruction to disregard will cure error, except in the extreme cases where it
appears that the evidence is clearly calculated to influence the minds of the
jurors and is of such a character as to suggest the impossibility of withdrawing
the impression produced in their minds.  See
Southern Pac. Transp. Co. v. Peralez, 546 S.W.2d 88, 96 (Tex. Civ. App.BCorpus Christi 1976, writ ref=d n.r.e.). 
Given the circumstances in which the instructions were given and the
lack of any evidence to suggest that the jurors did not heed the trial court=s instructions to disregard, we conclude that the
instruction to disregard cured any error created when the trial court allowed
testimony to continue without the sixth juror. 
The trial court therefore did not abuse its discretion in denying
Landmark=s motion for a mistrial.  Landmark=s first issue is overruled.  

Prejudgment Interest








By its second issue, Landmark argues that the trial
court erred in awarding Delphini prejudgment interest in the amount of twelve
percent, calculated from the earlier of the date this lawsuit was filed or the
forty-fifth day from the date that Delphini submitted invoices to
Landmark.                  

We apply an abuse of discretion standard of review
when evaluating a trial court=s award of prejudgment interest.  See Morales v. Morales, 98 S.W.3d 343,
348 (Tex. App.BCorpus Christi 2003, pet. denied) (citing Marsh
v. Marsh, 949 S.W.2d 734, 744 (Tex. App.BHouston
[14th Dist.] 1997, no writ)).  

Damages awarded for breach of contract bear
prejudgment interest.  Adams v. H
& H Meat Products, Inc., 41 S.W.3d 762, 780 (Tex App.BCorpus Christi 2001, no pet.).   "Prejudgment interest is compensation
allowed by law as additional damages for lost use of the money due as damages
during the lapse of time between accrual of the claim and the date of
judgment."  Johnson & Higgins
of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex.
1998).  Plaintiffs in contract disputes
have been permitted to recover prejudgment interest on both liquidated and
unliquidated claims.  See Preston Farm
& Ranch Supply, Inc. v. Bio‑zyme Enters., 625 S.W.2d 295, 298-99
(Tex. 1981) (applying rate set by contract as rate for prejudgment interest); Adams,
41 S.W.3d at 780.   In Phillips
Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480, 485 (Tex. 1978), the
supreme court recognized two separate bases for the award of prejudgment
interest: (1) an enabling statute; and (2) general principles of equity.   Statutory prejudgment interest applies only
to judgments in wrongful death, personal injury, property damage, and
condemnation cases.  Tex. Fin. Code Ann. '' 304.102, 304.201 (Vernon Supp. 2004-05); Kenneco
Energy, 962 S.W.2d at 530.  








Delphini is entitled to recover prejudgment interest
based on its breach of contract claim against Landmark.  See Adams, 41 S.W.3d at 780. Therefore,
any award of prejudgment interest is governed by the common law rather than by
any statute.  Kenneco Energy, 962
S.W.2d at 530; Adams, 41 S.W.3d at 780. 
In their respective appellate briefs, Delphini and Landmark both rely
heavily on statutes from the state finance and property codes to support or
argue against the trial court=s ruling. See Tex. Fin. Code Ann. ' 304.002; Tex.
Prop. Code Ann. '' 28.002 - .004, 28.006 (Vernon 2000).  We are, however, not required to rely only on
the interest rates mandated by these statutes, as this is not a claim involving
wrongful death, personal injury, property damage, or condemnation. See
Phillips Petroleum, 569 S.W.2d at 485. 
Instead, we may rely primarily on the terms of the contract established
between the parties as well as on general principles of equity.  See Adams, 41 S.W.3d at 780
(calculating interest using the rate set forth on invoices exchanged between
the parties); see also Montanaro v. Montanaro, 946 S.W.2d 428, 431 (Tex.
App.BCorpus Christi 1997, no writ) (finding an
appropriate interest rate as implied by other terms of the agreement).    

The subcontract entered into between the parties is
a standard Landmark subcontract and includes several provisions dictating the
amount of interest that the subcontractor (Delphini) would be required to pay
in case of any breach:

If the Subcontractor fails or refuses to proceed
with his work as directed by the Contractor or fails to perform said work in
accordance herewith, . . . the Contractor may, at Contractor=s option, . . . prosecute the work to
completion.  In case the Contractor deems
the foregoing procedure necessary . . . the Subcontractor agrees to pay to the
Contractor on demand the full amount of [any damages], together with interest
thereon at the rate of twelve per cent per annum until paid. 

 








The Subcontractor shall promptly amend and make good
any defective materials and/or workmanship to the entire approval and
acceptance of the Contractor . . . . 
[T]he Contractor shall have the right and power to have the defects
remedied or changes made at the expense of the Subcontractor, and the
Subcontractor agrees to pay to the Contractor on demand any and all loss and/or
expense paid or incurred by the Contractor in remedying such defects . . . together
with interest thereon at the rate of twelve per cent per annum, until paid, in
addition to all other loss, damage and extra expense which Subcontractor may
become liable for under this subcontract.

 

The twelve percent interest rate is thus mentioned
repeatedly, but only as intended to apply to subcontractors such as
Delphini.  Although there are multiple
provisions dictating the subcontractor=s obligations in case of a breach by the
subcontractor, we see there is no instruction in the contract regarding the
contractor=s obligations to the subcontractor in case of a
breach by the contractor.  There is,
however, the following provision:

Although drawn by Contractor, this agreement shall
in the event of any dispute over its meaning or application, be interpreted
fairly and reasonably and neither more strongly for or against either
party.  

 

While this clause is likely intended to allow
Landmark to escape the general rule of contract interpretation that would
strictly construe the contract against the drafting party, see Republic
Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 115 (Tex. 1978), we may
nonetheless read this clause as allowing a trial court to import principles of
fairness and equity into the contract when interpreting its provisions.  See Bituminous Cas. Corp. v. Maxey,
110 S.W.3d 203, 208 (Tex. App.BAustin 2003, pet. denied) (interpreting contract
terms according to plain, ordinary and generally accepted meaning).  Landmark could have included a provision
setting the interest rate in case of its own breach at the statutory minimum or
any other term, but it chose not to do so. 









The trial court, when determining the interest rate,
had already reached the conclusion that Landmark had breached its contract with
Delphini.  The court also had available
for its consideration the absence of a specific provision establishing Landmark=s liability for interest in case of a breach on its
part, the contract provisions that would have forced Delphini to pay a twelve
percent rate if it breached in any way, the Afair
and reasonable@ interpretation clause, and general principles of
equity. The court ultimately applied the interest rate against Landmark that
Delphini would have been obliged to pay had it breached against Landmark.  We conclude this is a reasonable application
of relevant guiding rules and principles, see Morales, 98 S.W.3d at 348,
and thus further conclude the trial court did not err in awarding prejudgment
interest at a rate of twelve percent.  

In addition to contesting the rate of interest
applied to the judgment against it, Landmark also complains that the court
erred in calculating the amount of interest from the earlier of the date this
lawsuit was filed or the forty-fifth day from the date that Delphini submitted
invoices to Landmark.   According to the
Texas Prompt Payment Act, an unpaid amount owed to a contractor or
subcontractor begins to accrue interest on the day after the date on which the
payment becomes due.  See Tex. Prop. Code Ann. ' 28.004 (Vernon 2000).[1]  Landmark=s payment to Delphini could be considered Adue@ on either of the two dates specified by the trial
court in its order, i.e., the date the lawsuit for breach of contract was filed
or the date when Delphini submitted its invoices to Landmark.  Therefore, it was not incorrect to use these
two dates in order to calculate interest. 








Landmark argues that its Apay when paid@ agreement with Delphini prevents the imposition of
interest until payment in full from the owner of the property is received: APayment to the subcontractor shall be conditioned on
payment to the contractor by the owner.@  However,
several Landmark employees testified that they had already sent several
payments to Delphini throughout the course of the construction project; as
Landmark had not been paid by the owner, these partial payments to Delphini
were not conditioned on payment to Landmark by the owner.  We conclude that Landmark=s abandonment of the Apay
when paid@ clause could reasonably be found by the trial court
to constitute a waiver of this clause as it applies to the application of
interest.  See Jernigan v. Langley,
111 S.W.3d 153, 156 (Tex. 2003) (per curiam) (discussing waiver); Motor
Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc., 1 S.W.3d 108, 111
(Tex. 1999) (same).  








Landmark also argues at the time of the suit that
there was a Agood faith dispute@
between the parties regarding whether Delphini had properly performed its
duties under the contract, and a good faith dispute will toll the obligation of
any party to pay the amounts owed.  See
Tex. Prop. Code Ann. ' 28.003 (Vernon 2000).  We do not disagree that the parties disputed
whether Delphini had adequately performed in full under its subcontract, and
that therefore Landmark could choose to rely on section 28.003 in withholding
the amount disputed.  However, while
section 28.003 allows a party to withhold prompt payment in the event of a good
faith dispute, it does not exempt this withheld amount from accruing interest
if the withholding party is ultimately found to be at fault for the
breach.  See id.; see also TA Oper.
Corp. v. Solar Applications Eng=g, Inc.,
No. 04-04-180-CV, 2005 Tex. App. LEXIS 2350, at *25 (Tex. App.BSan Antonio Mar. 30, 2005, no pet.) (designated for
publication) (holding trial court did not err in awarding prejudgment interest
to contractor despite owner=s claim of a good faith dispute).  Therefore, this statute does not render the
trial court=s judgment erroneous, and we conclude that the trial
court=s determination of the dates from which the interest
was to be calculated does not constitute an abuse of discretion.    

Landmark=s second issue is overruled.

Postjudgment Interest 

By its third issue, Landmark alleges that the trial
court erred in awarding postjudgment interest in the amount of twelve percent
per annum.  Texas common law allows
prejudgment interest to accrue at the same rate as postjudgment interest on
damages awarded for breach of contract.  Kenneco
Energy, 962 S.W.2d at 532.  
Having determined that the twelve percent rate applied to the
prejudgment interest was correct, we accordingly conclude that this rate could
also be properly applied to the postjudgment accrual of interest.  Landmark=s third issue is therefore overruled.

Conclusion

The judgment of the trial court is affirmed.  

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

 

Memorandum Opinion delivered and filed

this 13th day of October, 2005.











[1]This is in contrast to the common
law rule of prejudgment interest, in which prejudgment interest begins to
accrue on the earlier of (1) 180 days after the date a defendant receives
written notice of a claim or (2) the date suit is filed.  See Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998).